[Crim. No. 39054. Second Dist., Div. Five. Nov. 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK BELASCO, Defendant and Appellant.

**COUNSEL**

Seymour I. Cohen, under appointment by the Court of Appeal, Fischer & Hill and Dennis A. Fischer for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, Norman H. Sokolow and Jesus Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

HASTINGS, J.—Defendant Frank Belasco appeals from the judgment entered following a nonjury trial that resulted in his conviction of rape (count I—Pen. Code, § 261, subds. 2 and 3); unlawful sexual intercourse with a minor (count II—Pen. Code, § 261.5); and oral copulation (count III—Pen. Code, § 288a, subd. (b)(2)). He was sentenced to the state prison for the upper term of three years on count II as the court found "substantial aggravation"; said count was also found to be the principal term under Penal Code section 667.6. As to count I, he was sentenced to eight years, the sentence to run consecutively with count II pursuant to Penal Code section 667.6. The sentence as to count III was merged under Penal Code section 654 with count II and stayed until the sentences in counts I and II have been served. He appeals contending (1) that the trial court rulings on the admissibility of prior uncharged offenses and on the admissibility of "fresh complaint" testimony effectively denied the fundamental constitutional right of confrontation; (2) that he was denied a fair hearing by the rulings on evidence of prior uncharged sexual conduct between himself and the alleged victim; (3) that fundamental hearing fairness was denied by the pretrial rulings on prior uncharged offenses and fresh complaint evidence; (4) that he was denied effective assistance of counsel by the failure to obtain a psychiatric examination of the complaining witness; (5) that application of Penal Code section 667.6, subdivision (c) that results in a subordinate term sentence exceeding the principal term constitutes cruel and unusual punishment; (6) that the imposition of an upper term sentence for count II constitutes a sentence on an "uncharged offense"; (7) that there was an improper sentence by the erroneous application of Penal Code section 667.6, subdivision (c); (8) that imposition of a longer sentence on a subordinate offense constitutes an abuse of discretion; and (9) that application of the revised sentencing prerogatives of consecutive sentences pursuant to Penal Code section 667.6, subdivision (c) without notice violated due process.

Defendant, who divorced the victim's mother in 1977, resumed living with her on June 10, 1980. On June 19, he was home alone with his 14-year-old stepdaughter, Michelle G. He asked her if she had any

money. When she indicated that she didn't have any he told her to give him "something else." She thought he meant he wanted to have sexual intercourse so she started to leave. He grabbed her arm and pulled her down onto his lap. Thereafter they both stood up and he pulled her into the kitchen area. She grabbed a wooden spoon and started hitting him with it, because she "didn't want it to happen." He got mad, and grabbing her by the back of the neck, he took her into the master bedroom where he raped her. She did not resist because of the fear that he would beat her as he had done to her and other members of her family in the past. After defendant ejaculated on her leg, he got dressed and left the bedroom.

On June 20, Michelle G. was again alone at home with defendant when she received her school report card in the mail. (Her mother has two jobs and usually works from 6 a.m. to midnight.) She showed it to defendant who appeared disappointed. He then slapped her and as she proceeded to go to her room, he grabbed her and took her to the bedroom. He undressed her, kissed her breast and kissed the area of her vagina. Again, he engaged in sexual intercourse against her will. He ejaculated on her thigh and left the bedroom.

Later that evening she told her brother's girl friend about the sex acts, and on June 22 she told her boyfriend that her father had forced her to have sex with him. Later that evening she left home because she knew she would be alone with defendant the following morning and she didn't want to have sex with him. She went to her boyfriend's house and told his parents what had occurred. They convinced her to tell the police.

An examination at the hospital revealed the absence of seminal fluid in her vaginal cavity. On June 23, 1980, Dr. Woodling conducted a pelvic examination which revealed two abrasions in the perihymenal area. Dr. Woodling testified that in his opinion these injuries could only have been caused by "forced penile penetration," and that the injuries were three to four days old.

Defendant denied committing the sex acts against Michelle and testified that he had had disagreements with his stepdaughter concerning her boyfriend, a large dog and her report card.

■■ Defendant now argues that he was denied a fair hearing by the court's rulings on introduction of prior uncharged sexual conduct

between defendant and Michelle and by the court's ruling on "fresh complaint" evidence.

From the record it appears that the prosecution made a pretrial motion requesting the court to allow evidence of prior uncharged sexual conduct between Michelle and defendant so that the prosecution (1) could show that the victim knew from these prior sex acts what defendant meant when he told her he wanted "something else" (i.e., that she didn't resist to her full capabilities because she was frightened defendant would beat her as he did in the past when she refused to perform sexual acts with him); (2) could show why the victim did not tell her mother about the June 19 and 20 sexual assaults (i.e., she was warned by defendant on prior occasions that the family would break up if she told her mother about the sex acts); (3) to rehabilitate Michelle if the defense sought to impeach her with seemingly inconsistent statements made to the police. Additionally, the prosecution sought to introduce evidence that Michelle had told some friends about the prior sex acts. These statements were made before defendant returned to the home in June 1980. The prosecution also made a motion to introduce evidence regarding recent complaints Michelle made to some friends about the instant sexual acts.

The trial court ruled that the prosecution could introduce evidence of the prior uncharged sexual conduct (1) for the limited purpose of rehabilitating her if the defense sought to impeach her with the alleged inconsistent statement; and (2) for the purpose of showing that she knew what defendant meant in asking for "something else" and that she was in fear based upon past experience. However, the court advised the prosecution not to go into detail as to what the past experience consisted of.

The court also granted the prosecution's motion to introduce evidence relative to the fact the victim recently complained to three friends of the instant sex incidents (i.e., evidence of "fresh complaint").

At trial the prosecution did not present any evidence of the prior uncharged sex acts; the defense did not attempt to impeach the victim with the alleged inconsistent statements to the police; and evidence of "fresh complaint" was presented.

Contrary to defendant's arguments, the trial court did not err in permitting the prosecution to introduce evidence of prior uncharged sex

acts to rehabilitate the victim, Michelle, if the defense tried to impeach her with the alleged inconsistent statements to the police.

As the trial court noted, "it seems to me only fair to the People that they be allowed to explain why [the victim made inconsistent statements to the police], and if that explanation is inextricably wound up with a previous sexual act, it is impossible to be explained in another way. The alternative would be to allow the attack without the Defense and that would not give a fair trial to the People." (See *People* v. *Alfaro* (1976) 61 Cal.App.3d 414, 425 [132 Cal.Rptr. 356].)

Additionally, the court did not err in allowing the introduction of evidence of "fresh complaint" relative to the instant crimes.

The "complaint doctrine" allows testimony by third persons that the nonconsenting victim complained of a sex act by the defendant on the theory that "[i]t is natural to expect that the victim of such a crime would complain of it, and the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur." (*People* v. *Burton* (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433]; see *People* v. *Brown* (1973) 35 Cal.App.3d 317, 324 [110 Cal.Rptr. 854].)

Consequently, the testimony of the three witnesses relative to the victim's complaint was properly allowed.

From the record it appears that defendant was not denied his right to confront or cross-examine the victim, and that he received a fair trial.

 Defendant also argues that he was denied effective assistance of counsel at trial because he failed to make a *Ballard*[1] (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176-177 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]) motion.

 The burden of proving a claim of inadequate trial assistance is on defendant. Thus, defendant must show that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. In addition, defendant must establish that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious

---

[1]In *Ballard* the Supreme Court ruled that the victim in a sex-offense case could be ordered to submit to a psychiatric examination to determine whether her mental or emotional condition was likely to have an effect on her ability to tell the truth.

defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) If the record on appeal fails to disclose why counsel acted in the manner challenged, unless counsel was asked for an explanation and failed to provide one, or unless there could simply be no satisfactory explanation, the case must be affirmed on appeal. Appellate courts cannot be engaged "'in the perilous process of second-guessing.'" (*Id.*, at p. 426.)

 The record is totally silent as to the exact reasons defense counsel failed to make a *Ballard* motion. In many instances, a psychiatric examination would not be necessary or appropriate. (*Ballard* v. *Superior Court, supra*, at p. 175.) Here, it appears that Michelle's testimony was corroborated by Dr. Woodling's testimony in that she suffered abrasions which could only have resulted from forced penile penetration. Seminal fluid was not found in her vaginal cavity which corroborated her testimony that defendant ejaculated on her leg or thigh. In addition, there is no indication that Michelle suffered from any psychiatric or emotional problems which might tend to cause her to fantasize or that would bear on her credibility. To the contrary, it appears that Michelle was an intelligent, stable 14-year-old. Consequently, defense counsel may have believed that a psychiatric examination would have been nonproductive and time consuming and be of little or no value to defendant.

On the entire record before us, it appears that defendant's counsel acted as "an active advocate in behalf of his client" (*People* v. *Pope, supra*, at p. 424), and no constitutional right of defendant was violated.

 Defendant also contends that the court improperly applied Penal Code section 667.6, subdivision (c)[2] when he was sentenced.

---

[2]Penal Code section 667.6 provides in pertinent part: "... (c) In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm whether or not the crimes were committed during a single transaction. If such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison.

"(d) A full, separate, and consecutive term shall be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or

Pursuant to section 667.6, subdivision (c), the trial court sentenced defendant to the upper three-year term on count II and chose this sentence to be the principal term. The court then sentenced defendant to an eight-year consecutive term on count I, as the subordinate term.

Under section 667.6, if the defendant commits a violent sex crime[3] in conjunction with other offenses, whether or not the crimes were committed during a "single transaction," the court *may*, in lieu of the term prescribed in Penal Code section 1170.1, impose a full, separate and consecutive term for the violent sex crime. Thus, subdivision (c) gives the court the option of sentencing such a defendant to a full consecutive term or to a consecutive term computed as one-third of the midterm for the violent sex crime. If the court decides to apply section 667.6, subdivision (c), the term composed is consecutive to *any* other term of imprisonment, commences from the time the defendant would otherwise have been released, and may not be included in any determination pursuant to section 1170.1. Clearly, under the language of section 667.6, a violent sex crime sentenced thereto cannot be a "principal term" in a sentence calculation under section 1170.1, subdivision (a). Consequently, where a defendant commits crimes in addition to a violent sex crime, the offense with the greatest term of imprisonment which is not a violent sex crime will be the principal term, all other felonies consecutively sentenced are computed as one-third of the midterm, and all *violent* sex crimes are full terms to be served consecutively to these and any existing terms. And any subsequent term imposed commences at the time the defendant would otherwise be released from prison.

Here, the crime in count II (unlawful intercourse with a minor—Pen. Code, § 261.5) is a nonviolent sex crime. Forcible rape (count I—Pen.

---

288a by force, violence, duress, menace or threat of great bodily harm if such crimes involve separate victims or involve the same victim on separate occasions.

"Such term shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

[3]In June 1980, "violent sex crimes" as listed in section 667.6, subdivision (a) included rape by force or violence (Pen. Code, § 261, subd. 2); rape by threat of bodily harm (Pen. Code, § 261, subd. 3), rape in concert, by force or violence (Pen. Code, § 264.1); lewd or lascivious acts upon children under 14 by force, violence or threat (Pen. Code, § 288, subd. (b)); unlawful penetration by foreign object (Pen. Code, § 289); sodomy by force, violence, duress, menace, or threat (Pen. Code, § 286), and oral copulation by force, violence, duress, menace, or threat (Pen. Code, § 288a).

Code, § 261, subds. 2 and 3) is a violent sex crime. Thus, the court properly exercised its discretion pursuant to section 667.6, subdivision (c) and imposed a sentence on count II (nonviolent sex crime) as the principal term and a sentence on count I (violent sex crime) as the subordinate term.

Defendant further argues that the application of Penal Code section 667.6, subdivision (c) constituted cruel and unusual punishment. In *People* v. *Preciado* (1981) 116 Cal.App.3d 409, 412 [172 Cal.Rptr. 107], this argument was made with respect to subdivision (d) of section 667.6 (see fn. 2, *ante*). In *Preciado* the court rejected defendant's contention and found the severity of sentence was directly proportionate to the number and violence of his crimes. Here, defendant's sentence is also directly proportionate to the number and violence of his crimes and consequently, does not constitute cruel and unusual punishment.

In addition, defendant argues that he should have been given notice in the information that the court would apply section 667.6, subdivision (c). However, there is no requirement that any notice be given. In any event, he knew or should have known that the provisions of section 667.6, subdivision (c) were applicable to his case. The probation officer's report specifically recommends a sentence under that section, and the prosecution, at the sentencing hearing, argued vigorously for the applicability of section 667.6, subdivision (c). Consequently, there was no error.

■ Defendant also contends that the trial court abused its discretion in sentencing him to the upper terms on counts I and II.

The court expressly agreed with the factors in aggravation that were listed in the probation report. As to count I (forcible rape) the court specifically found (1) the victim, a 14-year-old girl, was particularly vulnerable (Cal. Rules of Court, rule 421(a)(3)); (2) there was premeditation (rule 421(a)(8)); and (3) defendant took advantage of a position of trust (i.e., that of a stepfather) (rule 421(a)(12)).

As to count II (unlawful sex with a minor) the court found aggravating factors of great violence of bodily harm and the threat of bodily harm which disclosed a high degree of callousness (rule 421(a)(1)) (i.e., the victim was in great pain during the sex act and suffered abrasions in the perihymenal area which caused bleeding).

On the basis of the above aggravating factors as found by the court, it cannot be said that the trial court abused its discretion in sentencing defendant to the upper term on both counts.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied December 14, 1981, and appellant's petition for a hearing by the Supreme Court was denied January 20, 1982. Kaus, J., did not participate therein.