[Crim. No. 15234. Fourth Dist., Div. One. Jan. 20, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS RAY JAMISON, Defendant and Appellant.

1168

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Handy Horiye, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, A. Wells Petersen and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**COLOGNE, Acting P. J.**—Thomas Ray Jamison appeals his jury-tried conviction of forcible rape (Pen. Code,[1] § 261, subd. (2)) with use of a firearm during the rape (§ 12022.3, subd. (a)) and robbery (§ 211) with personal use of a firearm (§ 12022.5). The trial court sentenced him under section 667.6, subdivision (c), to a full, separate and consecutive term of eleven years for the rape with firearm use (eight years upper term plus three years enhancement), and to three years, the middle term, for the robbery, staying the firearm use enhancement connected with the robbery.

Catherine S., a 21-year-old college student, met Jamison for the first time on January 18, 1982, at a farewell party for Timothy Peete, Jamison's neighbor. Jamison attended the party a total of about five minutes and conversed briefly with Catherine about her brother whom Jamison knew. A few days later, while driving by Catherine's apartment, Jamison told Peete Jamison would "like to get some of that," meaning he would like to have sex with Catherine. Peete pointed out the exact apartment in which Catherine lived.

On March 31 at about 6:30 p.m., Jamison rapped on the screen door of Catherine's apartment and walked inside. Catherine looked to see who it

---

[1] All statutory references are to the Penal Code unless otherwise specified.

was and Jamison reminded her he was Peete's friend. Catherine recalled having met Jamison and she offered him a glass of wine. The two conversed for about 45 minutes before Jamison said he wanted to make love to her but could not do anything about it because Peete liked her. Catherine became extremely nervous and Jamison pursued the matter, trying to kiss her. Catherine pushed him away. Jamison asked her if she thought he was not good enough for her and she replied "no," she just did not want to kiss him.

Jamison again tried to kiss her and she pushed him away once more. He then drew a gun. He showed her the gun's clip was fully loaded. He put the gun next to her temple and said, "give me your tongue." He kissed her again, then said he was going to a next door apartment and "get" its occupant because Jamison did not like the way he looked at him as Jamison walked by. Catherine pleaded with Jamison not to shoot the neighbor. In response, Jamison required Catherine to get on the floor on her stomach and he tied her hands behind her back and to an ironing board using a telephone cord. He announced he was doing this so he could go next door and "get" the neighbor. When Catherine began to cry, Jamison told her if she kept doing so he would have to shoot her. She stopped crying and again asked him not to hurt the neighbor. He answered if she were "real sweet" to him, he would not "get" the neighbor. Jamison then untied Catherine's wrists, had her turn over and retied them. He proceeded to remove her clothes and continued kissing her. He fondled her private parts, causing bleeding, then raped her. During intercourse, he said, among other things, he wished he was white so he could marry her.

Afterward he told Catherine he wanted money. When she explained she had none, he decided to take some of her property, including a television, two typewriters, a stereo receiver, two speakers, a calculator, a camera and two gold necklace chains. In order to do so, he required Catherine to help him conceal the belongings in luggage, boxes and a laundry basket, and to carry her property to his car. Jamison took Catherine's telephone number and told her if he found the police were looking for him he would kill her and the neighbor. When he left, Catherine told her neighbors about the events, including the gun, the rape and the robbery. She warned them not to call the police, but one of them did anyway.

When Catherine returned to her apartment, she received a phone call from Jamison who again told her if police were looking for him he would come back and get her.

Later, in April, Jamison again called Catherine to ask her why she had called police. He was arrested not long afterward. Most of Catherine's property which he had attempted to dispose of was recovered.

Jamison's defense was, essentially, the intercourse and taking of property were accomplished with Catherine's consent. His testimony was impeached by evidence of irreconcilable statements he made to the police shortly after his arrest to the effect he was not in Catherine's apartment at the time in question and he had not taken any property.

■ Jamison contends admission of evidence of a prior rape was prejudicial error. The prior rape occurred when Jamison knocked on the door of the home of Janet D., whom Jamison had seen once before, and told Janet her daughter had been hurt on the playground. When Janet opened the door, Jamison pushed his way into the house, threatened Janet with a knife, turned on some music, directed her to go upstairs and raped her. He then tied her arms and legs, using Janet's pantyhose, and asked her for money. He searched through her wallet, purse and drawers, taking some money and jewelry, including necklaces and bracelets. He also took some photographs of Janet and her daughter. He told Janet if she called the police, he would come back and kill her and her daughter.

The prosecutor offered the evidence of the earlier rape to corroborate Catherine's testimony the rape was not consensual, to show, as to a burglary count against Jamison, his intent was to commit rape, and to show his common design. In admitting the evidence, the trial court identified 11 points of similarity in that the victims were "both single, females alone in their apartment, females observed on a prior occasion, entered under false pretenses," "knew someone close to the victim, used a weapon once inside, both victims tied, demanded money, took jewelry in both cases, necklaces," "told both victims upon leaving, 'Better not call the police,' and in both cases he threatened someone else in addition to the victim."

Both Jamison and the Attorney General agree the evidence of the prior rape bears on the material issue of corroboration. Jamison contends, however, none of the features of the prior rape are sufficiently distinctive so as to corroborate Catherine's testimony. Jamison criticizes the finding certain features were similar, noting such things as that Catherine lived alone while Janet lived with a daughter, a gun was used in Catherine's rape and a knife in Janet's, the tying occurred before and during the rape of Catherine but after the rape of Janet, and there were differences in the entry into the victims' homes. Jamison further claims the remaining features are not distinctive in the sense that the stealings, warnings not to call police and threats directed to the victims as well as others are not so distinctive as to conclude if he committed the prior rape he must have committed the present one (see *People* v. *Thomas* (1978) 20 Cal.3d 457, 465 [143 Cal.Rptr. 215, 573 P.2d 433]). Finally, Jamison points to certain dissimilarities in that Catherine was a 21-year-old student who socialized with friends common to herself

and Jamison, while Janet was a 42-year-old nurse who had a daughter about the age of Jamison, whom she did not know; and the rape of Catherine took place after 45 minutes of conversation, while Janet's rape involved an immediate assault when she opened the door.

We observe certain of Jamison's descriptions of the evidence are tainted with subjectivity understandably born of advocacy. When he says the entry into Catherine's apartment was "totally consensual," we cannot but point out Jamison had knocked and was inside Catherine's apartment before she even looked to see what or who it was, and she was surprised. Moreover, it hardly conveys an accurate impression to say Catherine "socialized with some friends common to both herself and [Jamison]," in comparison to Janet's not knowing Jamison at all, when the fact is Catherine had met Jamison only once before, at a party he attended for five minutes, and they talked inconsequentially about her brother and perhaps his travel plans. Thus, we disregard these assertions of mistaken similarity or dissimilarity.

The remaining points raised in Jamison's critique of the trial court's ruling simply are not sufficiently significant to permit the conclusion there was error in the admission of the prior rape evidence. The 11 points of similarity the trial court identified are ample support for the admission of the evidence, in combination creating a picture sufficiently distinctive to corroborate Catherine's testimony. Contrary to Jamison's assertion, this evidence was not solely relevant to the improper purpose of admissibility, propensity of Jamison to commit the crime (*People* v. *Thompson* (1980) 27 Cal.3d 303, 316 [165 Cal.Rptr. 289, 611 P.2d 883]). We note the jury was properly instructed in the words of CALJIC No. 2.50[2] on the limited use to which the evidence could be put, and we find no error in the admission of the evidence.

■ Jamison contends instruction in the language of CALJIC No. 10.21 was prejudicial error. The instruction given was: "It is not essential to a conviction of a charge of rape that the testimony of the witness with whom

---

[2]The trial court instructed:

"Evidence has been introduced for the purpose of showing that the Defendant committed a crime other than that for which he is on trial.

"Such evidence, if believe[d], was not received and may not be considered by you to prove that he is a person of bad character, or that he has a disposition to commit crimes.

"Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show a characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case which would further tend to show the corroboration of the testimony of the prosecuting witness.

"For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case.

"You are not permitted to consider such evidence for any other purpose."

sexual intercourse is alleged to have been committed be corroborated by other evidence." The court also gave CALJIC No. 2.27, as follows: "Testimony which you believe given by one witness is sufficient for the proof of any fact. However, before finding any fact required to be established by the Prosecution to be proved solely by the testimony of such a single witness, you should carefully review all the testimony upon which the proof of such fact depends."

This court disposed of Jamison's contention in *People* v. *McIntyre* (1981) 115 Cal.App.3d 899 [176 Cal.Rptr. 3], involving a defendant convicted of forcible rape and forcible oral copulation. In *McIntyre,* we said (at p. 907): "It is apparent CALJIC No. 2.27 refers to reliability of all witnesses' testimony in proving a fact. CALJIC No. 10.21, on the other hand, deals with the need (or lack of it) for corroboration of the victim's testimony in the act constituting the crime of rape.

"While certain crimes require corroboration (obtaining money under false pretenses, Pen. Code, § 1110; perjury, Pen. Code, § 1103a; abortion, Pen. Code, § 1108), rape does not. It is not appropriate, of course, to instruct that corroboration is not necessary in all other crimes, but rape has some special features which make such an instruction on lack of corroboration most proper. The proof of the elements of this crime often turns on a credibility contest between the accused and the accuser alone, since the act is most often committed in private (see *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 881 . . . ). Permitting a jury to operate under the misconception corroboration is required would put the value of the victim's testimony on a level below that of the defendant's testimony, credibility aside, and that is not the law. We hold CALJIC No. 10.21 is proper in combination with CALJIC No. 2.27.

"In any event, we believe the instruction correctly states the law, a matter McIntyre concedes, and is not so repetitious on the subject of a witness' testimony as to give undue emphasis to the victim-witness' testimony and be prejudicial to him. We note we cannot accept McIntyre's assertion *Rincon-Pineda, supra,* disapproved CALJIC No. 10.21 sub silentio. We conclude, moreover, even if error exists, it does not require reversal (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 . . .)."

None of the points made by Jamison changes our view of the matter as expressed in *McIntyre* which applies fully to Jamison's case. It remains a correct observation that "[p]ermitting a jury to operate under the misconception corroboration is required would put the value of the victim's testimony on a level below that of the defendant's testimony, credibility aside, and that is not the law." (*McIntyre, supra,* 115 Cal.App.3d at p. 907.) This

observation supports giving the instruction. Nor can we accept as having substance Jamison's assertions concerning the order of the trial court's reading of the instruction and the constitutionality of the instruction under principles of equal protection and due process. Finally, we wish to emphasize, contrary to Jamison's point of view, this case was not close and the giving of CALJIC No. 10.21, even if considered error, could not have affected the outcome.

 Jamison contends the full sentence for the robbery consecutive to the single sex offense was improper. First, Jamison contends the sentence imposed was incorrect because the so-called "box theory" (see *People* v. *Ottombrino* (1982) 127 Cal.App.3d 574, 588, fn. 4 [179 Cal.Rptr. 676]) only applies to sentences for multiple sex crimes, not merely multiple crimes. Here, of course, we have sentencing involving a single forcible sex offense mentioned in section 667.6, subdivision (c) (§ 261, subd. (2)), and an offense, the robbery, not mentioned in section 667.6, subdivision (c). Subdivisions (c) and (d) of section 667.6 read:

"(c) In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm *whether or not the crimes were committed during a single transaction.* If such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison.

"(d) A full, separate, and consecutive term shall be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or threat of great bodily harm *if such crimes involve separate victims or involve the same victim on separate occasions.*

"Such term shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the

time such person would otherwise have been released from prison." (Italics added.)

 In addressing the issue, we apply the following rules of statutory construction: "The fundamental rule is that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] '[A] construction making some words surplusage is to be avoided.' [Citation.] When used in a statute words must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear, and *the various parts* of a statutory enactment *must be harmonized by considering the particular clause or section in the context of the statutory framework* as a whole. [Citations.] In addition, we consider the legislative history of the statute as well as the historical circumstances of its enactment in determining the intent of the Legislature. [Citation.]" (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104];[3] italics added.)

 Jamison posits his argument on the fact the word "crimes," in the plural, is used in both subdivisions as indicated in the above italicized phrases, and on the fact that in cases involving multiple violent sex crimes within subdivision (c) descriptive language refers to those provisions as applicable to "multiple violent sex offenses" (*People* v. *Masten* (1982) 137 Cal.App.3d 579, 592 [187 Cal.Rptr. 515]; *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 242 [182 Cal.Rptr. 406]) or "multiple forcible sex crimes" (*People* v. *Ottombrino, supra,* 127 Cal.App.3d 574, 586). Those descriptions certainly are correct, but does subdivision (c) also apply to a case involving only a single forcible sex crime mentioned in the subdivision when another nonlisted offense is also committed?

Jamison's emphasis on the plural use of the word "crimes" is unwarranted in light of the fundamental principle of statutory construction enunciated for the Penal Code itself that "the singular number includes the plural, and *the plural the singular*" (§ 7; italics added). Nor can any weight be put on the descriptive statements in the cases as they do not represent

---

[3]Nowhere in *Black* do we find a statement or holding to the effect the multiple use of the same word in the same section is intended to have the same meaning throughout, unless expressly excepted, as the dissent indicates. The import of *Black's* main holding that "minor" in Welfare and Institutions Code section 707.2 applies to persons over 18 years of age as well as under that age is to the contrary, particularly when considering the Juvenile Court Law as a whole. "Minor" may include only persons under 18 in some sections or parts of sections but may encompass persons over 18 in other provisions. It all depends on the context, purpose and history of the statutory language is the lesson of *Black.*

holdings on the issue presented, whether subdivision (c) can apply to a single forcible sex offense mentioned in its provisions, when there is sentencing involving another or other offenses outside its provisions.[4]

It is clear, looking at the two subdivisions from the standpoint of their purpose, to deter forcible, violent sex crime, mandatory subdivision (d) applies only to multiple violent sex offenses, as listed, because subdivision (d) becomes applicable only where a listed crime is committed against "separate victims" or "the same victim on separate occasions," in each instance requiring more than one violent sex crime. On the other hand, viewed from the standpoint of the same legislative purpose to deter forcible, violent sex crime, discretionary subdivision (c) encompasses both multiple and single forcible sex crimes as listed. The language of neither subdivision leads to any other conclusion. To the contrary, the language of subdivision (c), "a full, separate, and consecutive term . . . *for each violation* . . . by force, violence, duress, menace or threat of great bodily harm whether or not the crimes were committed during a single transaction" (italics added), quite clearly includes within its terms a single violent sex crime of the type listed. We note the subdivision (c) language "*the* crimes . . . during a single transaction" (italics added), would apply to crimes not listed as well as those listed but, by comparison, the subdivision (d) language "*such* crimes" (italics added) is limited to the listed offenses. Since in order to impose a consecutive sentence some other crime is necessary, the difference in the language of the subdivisions permits the conclusion "the crimes" was purposefully intended to include both nonsubdivision (c) crimes and crimes listed in the subdivision. This conclusion that the subdivision (c) language is applicable to a single violent sex offense, as listed, when another offense is also committed, carries forward the obvious legislative purpose of subdivision (c) to provide for harsher punishment and thus a deterrent to those multiple offenders who would commit a violent sex offense. There is no indication to the contrary in the legislative history of the section, part of chapter 944 of the Statutes of 1979, which dealt with individual as well as multiple crimes predominantly in the sex offense area (see *Review of Selected 1979 California Legislation* (1980) 11 Pacific L.J. 429, 431-432, 438).

Support for this conclusion is found in the case of *People* v. *Belasco* (1981) 125 Cal.App.3d 974, 983-984 [178 Cal.Rptr. 461], which involved sentencing on a single count for an offense mentioned in subdivision (c),

---

[4]It must be pointed out that *People* v. *Waite* (1983) 146 Cal.App.3d 585 [194 Cal.Rptr. 245], decided by this court, represents a ruling only under subdivision (d) of section 667.6. The sentencing was not under subdivision (c), the particular language of which *Waite* quoted in a footnote but did not analyze or apply. Any statements in *Waite* about subdivision (c) were unnecessary to its decision, and thus were dictum.

forcible rape, and on another count for an offense not mentioned in the subdivision, unlawful sexual intercourse with a minor (§ 261.5). *Belasco* approved application of subdivision (c) in those circumstances. Though not addressing the issue expressly, *Belasco* said, in part: "Under section 667.6, if the defendant commits a violent sex crime [fn. omitted] in conjunction with other offenses, whether or not the crimes were committed during a 'single transaction,' the court *may,* in lieu of the term prescribed in Penal Code section 1170.1, impose a full, separate and consecutive term for the violent sex crime. . . . [T]he court properly exercised its discretion pursuant to section 667.6, subdivision (c) and imposed sentence on count II (non-violent sex crime) as the principal term and a sentence on count I (violent sex crime) as the subordinate term." (*Id.* at pp. 983-984.)[5]

Jamison conducts an extensive analysis of sentencing practice under section 667.6, subdivisions (c) and (d), and in connection with section 1170.1, relating to consecutive sentencing in general. Much of what he says has been cleared up by the recent case of *People* v. *Belmontes, supra,* 34 Cal.3d 335, which held subdivision (c) is not an exclusive means for punishing violations of crimes within its provision, i.e., section 1170.1 may be used instead of or in combination with section 667.6 in the trial court's discretion (*id.* at pp. 345-346) and so long as a statement of reasons accompanies each such sentencing choice (*id.* at pp. 347-348).

Here, after extended briefing and argument on the subject, the trial court expressed its awareness of its discretion, as outlined in *Belmontes,* and otherwise correctly exercised it, properly stating its reasons for the sentencing choices as required by *Belmontes.*[6] There was no error in Jamison's sentencing.

Judgment affirmed.

Staniforth, J., concurred.

---

[5]While, as the dissent points out, *Belasco* was not agreed with (or even mentioned) by *People* v. *Belmontes* (1983) 34 Cal.3d 335, 346 [193 Cal.Rptr. 882, 667 P.2d 686], insofar as its statement, not here pertinent, that a violent sex crime within section 667.6, subdivision (c), cannot be a principal term in a sentence under section 1170.1, subdivision (a), it is only fair to observe that "*consecutive* term" (§ 667.6, subds. (c) and (d); italics added), in its ordinary, common meaning, connotes a term that *follows* a preceding term. The *Belasco* view is thus eminently reasonable and logical, though in the hindsight of *Belmontes* it is wrong.

[6]At one point during the sentencing hearing, the court stated: "So I am required, *if* I'm going to use 667.6(c), to state my reasons, and I'm satisfied that then I'm required to comply with Rule 425 [criteria affecting concurrent or consecutive sentences], if I so choose." (Italics added.)

**BUTLER, J.**—I dissent from so much of the majority opinion as concerns issues on sentencing and concur in the remainder.

With reluctance, I plunge into the murky waters of violent sex crime sentencing, mindful of other opinions which, like kelp, seek sunlight only to be swept away and moulder on a sandy beach, attracting vagrant flies and vexing unaware readers. The trial judge's views on the subject deserve publication. "Having once made that determination, we then come to the area which we approach the Alice in Wonderland rule of the determinate sentencing law, and I was reminded as I thought about this in the middle of the night of President Carter's statement about lusting in your heart. I've lusted in my heart for some changes in the determinate sentence law so trial judges can understand it, but then we might put the Appellate Courts out of work. I don't think so, but we certainly might." If indeed, the determinate sentencing law is the rabbit hole through which we enter Wonderland, I accept the invitation to the Mad Hatter's tea party.[1] I restate the sentence.

Jamison was convicted on count 1, rape (§ 261, subd. (2)) and count 2, a robbery (§ 211). Catherine was the victim of the rape which was followed immediately by the robbery of her property, all occurring within her apartment within the space of a couple of hours. Jamison used a gun in each offense (§§ 12022.3, subd. (a); 12022.5). The court determined the rape and robbery were separate individual offenses, each involving violence and concluded section 654 banning multiple punishment for acts committed within the same transaction was not applicable. The court then opted for consecutive sentencing under section 667.6, subdivision (c) and sentenced the rape count noting that term would have to be served after full completion of the robbery sentence.

The court imposed the upper term of eight years on the rape count, adding a three-year enhancement for the gun use. The court then sentenced Jamison

---

[1] "The Hatter opened his eyes very wide on hearing this; but all he *said* was, 'Why is a raven like a writing-desk?'

"'Come, we shall have some fun now!' thought Alice. 'I'm glad they've begun asking riddles—I believe I can guess that,' she added aloud.

"'Do you mean that you think you can find out the answer to it?' said the March Hare.

"'Exactly so,' said Alice.

"'Then you should say what you mean,' the March Hare went on.

"'I do,' Alice hastily replied; 'at least—at least I mean what I say—that's the same thing, you know.'

". . . . . . . . . . . . . . . . . . . . .

"'Have you guessed the riddle yet?' the Hatter said, turning to Alice again.

"'No, I give it up,' Alice replied. 'What's the answer?'

"'I haven't the slightest idea,' said the Hatter.

"'Nor I,' said the March Hare.

"Alice sighed wearily. 'I think you might do something better with the time,' she said, 'than wasting it in asking riddles that have no answers.'" (Carroll, Alice's Adventures in Wonderland.)

on the robbery count, imposing the midterm of three years and "staying" the enhancement on the gun use in the robbery under section 1170.1, subdivision (g) (now subd. (h)). The court stayed imposition of the weapon use as to the robbery, properly noting to punish Jamison again for the gun after a section 12022.3, subdivision (a) enhancement was already imposed would violate dual use of facts proscriptions. (Cal. Rules of Court, rule 441.) Although the court incorrectly relied on section 1170.1, subdivision (g) (now subd. (h)), which authorizes *striking* of enhancements if circumstances in mitigation are found (see *People* v. *Hughes* (1980) 112 Cal.App.3d 452 [169 Cal.Rptr. 364]), the stay was otherwise proper and we do not need to modify the judgment, except insofar as to point out the inaccuracy here. Jamison's sentence thus totaled 14 years.

Simply stated, the court sentenced Jamison on the robbery to a full term under section 1170 and used section 667.6, subdivision (c) to impose another full, consecutive sentence for the rape. This was error. A single violent sex offense cannot be sentenced under section 667.6, subdivision (c). We said so in *People* v. *Waite* (1983) 146 Cal.App.3d 585 [194 Cal.Rptr. 245] (pet. for hg. den. Nov. 23, 1983): "In summary, sections 1170.1 and 667.6 are merely computational sentencing statutes, each designed for use when imposing consecutive sentences on those who commit forcible sex crimes as defined in sections 261, 264.1, 286, 288, 288a and 289. Which sentencing statute applies depends upon whether more than one forcible sex crime was committed and the circumstances surrounding those crimes. *If only one of the multiple crimes is a forcible sex offense, it must be sentenced under section 1170.1 as a 'principal' or 'subordinate' term with the other crimes.* If more than one of the listed forcible sex crimes are sentenced together and they involve the same victim on the same occasion, the court has its option to sentence under either section 1170.1 or section 667.6, subdivision (c). Where the forcible sex crimes involve separate victims or the same victim on separate occasions, the court must sentence these crimes consecutively pursuant to section 667.6, subdivision (d)." (*Id.,* at p. 594, italics added.) The italicized portion is included within an exhaustive, penetrating and authoritative analysis of the complex sentencing scheme involving violent sex offenses. This case requires that analysis be further developed.

Construction of the provisions of the determinate sentencing law must be undertaken against the legislative history of the act, policies underlying the various sentencing procedures and judicial interpretation so far accrued since the law's effective date. As *Waite* and *People* v. *Belmontes* (1983) 34 Cal.3d 335 [193 Cal.Rptr. 882, 667 P.2d 686] demonstrate, resolution of these sentencing issues requires consideration of all the act's provisions to ascertain legislative intent and to reach results consistent with the policies

underlying the various sections of the act. Section 667.6, subdivision (c), viewed in this context, must be read with other provisions providing for the consecutive sentencing of various offenses. Here, simplicity is not a virtue and prolixity is not a vice.

*Belmontes* considered the relationship between section 667.6, subdivision (c) and section 1170.1 and held courts have the option to choose between these sections in sentencing violent sex offenses. While *Belmontes* did not address our issue as the defendant there was convicted and sentenced for multiple violent sex offenses affecting a single victim on the same occasion, the opinion clearly refers to multiple forcible sex offenses as contemplated by both subdivisions (c) and (d) of section 667.6 as do other cases. (*People v. Karsai* (1982) 131 Cal.App.3d 224 [182 Cal.Rptr. 406]; *People v. Masten* (1982) 137 Cal.App.3d 579 [187 Cal.Rptr. 515].)

The majority cite *People v. Belasco* (1981) 125 Cal.App.3d 974 [178 Cal.Rptr. 461] as holding a single violent sex crime may be sentenced consecutive to a nonviolent sex crime under section 667.6, subdivision (c).

In *Belasco,* the defendant was convicted of count I, rape (§ 261, subds. (2) and (3)), count II, unlawful sexual intercourse with a minor (§ 261.5) and count III, oral copulation by a person over 21 with a person under 16 (§ 288a, subd. (b)(2). "He was sentenced to the state prison for the upper term of three years on count II as the court found 'substantial aggravation'; said count was also found to be the principal term under Penal Code section 667.6. As to count I, he was sentenced to eight years, the sentence to run consecutively with count II pursuant to Penal Code section 667.6. The sentence as to count III was merged under Penal Code section 654 with count II and stayed until the sentences in counts I and II have been served." (*People v. Belasco, supra,* 125 Cal.App.3d at p. 978.) The court then addressed the defendant's contention section 667.6, subdivision (c) was improperly applied. "Pursuant to section 667.6, subdivision (c), the trial court sentenced defendant to the upper three-year term on count II and chose this sentence to be the principal term. The court then sentenced defendant to an eight-year consecutive term on count I, as the subordinate term." (*Belasco, supra,* at p. 983.) The court affirmed the sentence. "Here, the crime in count II (unlawful intercourse with a minor—Pen. Code, § 261.5) is a nonviolent sex crime. Forcible rape (count I—Pen. Code, § 261, subds. 2 and 3) is a violent sex crime. Thus, the court properly exercised its discretion pursuant to section 667.6, subdivision (c) and imposed a sentence on count II (nonviolent sex crime) as the principal term and a sentence on count I (violent sex crime) as the subordinate term." (*Belasco, supra,* at pp. 983-984.) *Belasco* misconstrues section 667.6, subdivision (c) in holding a violent sex crime cannot be a principal term. "If the court decides to apply

section 667.6, subdivision (c), the term [imposed] is consecutive to *any* other term of imprisonment, commences from the time the defendant would otherwise have been released, and may not be included in any determination pursuant to section 1170.1. *Clearly, under the language of section 667.6, a violent sex crime sentenced thereto cannot be a 'principal term' in a sentence calculation under section 1170.1, subdivision (a).* Consequently, where a defendant commits crimes in addition to a violent sex crime, the offense with the greatest term of imprisonment which is not a violent sex crime will be the principal term, all other felonies consecutively sentenced are computed as one-third of the midterm, and all *violent* sex crimes are full terms to be served consecutively to these and any existing terms." (*Belasco, supra,* at p. 983, italics added.) *Belmontes* disapproves *Belasco's* reasoning: "Thus, we conclude that if a defendant is convicted of both sex offenses and nonsex offenses, a trial court may properly designate the longest nonsex offense as the principal term and may treat all of the sex offenses under section 667.6, subdivision (c).

"In exercising its sentencing discretion, the court should make an individual determination as to each sex offense. Thus, a court could choose to have a sex offense serve as the principal term if it carried the longest sentence and to treat all other offenses—regardless of whether they include sex offenses listed in section 667.6, subdivision (c)—as subordinate terms under section 1170.1. A court could alternatively choose to treat some of the sex offenses under the principal/subordinate scheme of section 1170.1, while imposing fully consecutive sentences on others under section 667.6, subdivision (c). The computations under sections 1170.1 and 667.6, subdivision (c) are to be done separately; the total of the section 667.6 computation would then be added to the section 1170.1 total." (*People v. Belmontes, supra,* 34 Cal.3d at p. 346.) A sentence under section 667.6, subdivision (c) is a decision concerning *consecutive* sentencing. (*Belmontes, supra,* at p. 347.) Once chosen, a section 667.6, subdivision (c) term is necessarily excluded from "any determination" under section 1170.1, subdivision (a). A term sentenced under section 667.6, subdivision (c) cannot be the principal term. So too, once a term is sentenced under section 667.6, subdivision (c), neither can it be a subordinate term.

The narrow view taken by the majority construing section 667.6, subdivision (c) has facial merit. The subdivision permits a full, separate and consecutive term for "each violation" resulting in a violent sex crime. The majority then reduces the word "crimes" in the next phrase, "whether or not the crimes are committed during a single transaction," to the singular by construing the plural "crimes" as necessarily including the singular by reason of section 7. The balance of the subdivision speaks of "term" in the singular.

The majority's focus on the plural "crimes" in subdivision (c) incorrectly isolates that word and construes it separately and apart from the use of that word throughout the section. Subdivision (d) mandates full, separate and consecutive terms for violent sex offenses ". . . if such *crimes* involve separate victims or involve the same victim on separate occasions." Here, the phrase "crimes" necessarily refers to more than one of the enumerated violent sex offenses listed in that section. It is a general rule of statutory construction when an identical term is used in part of a statute, it is presumed the Legislature intended its meaning to be the same throughout the entire section, absent an express exception. (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) It follows then the word "crimes" appearing in subdivision (c) is to be given the same meaning as its usage in subdivision (d) and refers to multiple violent sex offenses, not to a single one. "In enacting Penal Code section 667.6, the Legislature has chosen to treat violent sex offenses and violent sex offenders in a manner differently than other types of offenses and offenders. The statute is directed at recidivism by providing for longer enhancements for prior convictions of the same type of offense. The statute is directed at multiplicity of offenses by providing for full, separate, consecutive sentencing." (*People* v. *Karsai, supra,* 131 Cal.App.3d at p. 242.) And *Belmontes* admonishes section 667.6, subdivision (c) is obviously a much harsher sentencing measure than section 1170.1. It is of course harsher because the consecutive terms contemplated by subdivision (c) are full terms and may not be diminished by the section 1170.1, subdivision (a) one-third the midterm limitation on the length of consecutive subordinate terms.

The rape of which Jamison was convicted is punishable by imprisonment for three, six or eight years in the state prison. (§ 264.) Jamison's robbery is punishable by imprisonment for two, three or five years in the state prison. (§ 213.) As *Karsai* points out, violent sex offenses are punished differently than other offenses and section 667.6 is directed at multiplicity of violent sex offenses by providing for full, separate and consecutive sentencing. Using section 667.6, subdivision (c) to sentence a single violent sex offense does not add to the punishment prescribed by section 264 (three, six or eight years). To punish such a single violent sex offense separately from a nonviolent sex offense or a nonsex offense only enables the court to give a full term for such latter offense; in effect, the nonsex offense is treated more harshly. This result contravenes the legislative purpose of section 667.6.[2]

---

[2]If Jamison is punished under section 1170.1, subdivision (a), the longer rape count (eight years) would be the principal term enhanced three years for the weapon use (§ 12022.3, subd. (a)) and the robbery would be limited to one-third the midterm (one year), and the gun use would be stayed for a total sentence of twelve years.

Indeed, the facts here do not support a harsher sentence. The court stated it did not intend

This construction of the statute invites equal protection attacks. The defendant who robs a gas station and thereafter commits an unrelated violent sex offense receives two full terms—one for the robbery and one for the rape. I find nothing in the determinate sentencing law that permits a robbery to be punished at full term when coupled with a violent sex offense. My reading of section 667.6, subdivision (c) compels the conclusion reached by *Karsai* that only persons who commit multiple sex offenses are subjected to the harsher treatment acknowledged by *Belmontes.*

The majority points to the differences in language of subdivision (d) and subdivision (c) to the kind of crimes to which the respective sections are directed. Although I believe subdivision (c) is clear in its meaning, at best the phrase "whether or not the crimes are committed during a single transaction," appearing in subdivision (c) is ambiguous. If so, under settled rules of statutory construction, we would be bound to resolve the ambiguity in favor of the defendant. (*People v. Belmontes, supra,* 34 Cal.3d 335, 346.)

In summary, a single violent sex crime may not be sentenced under section 667.6, subdivision (c). Instead, it must be sentenced under the provisions of section 1170. When accompanied by a nonviolent sex offense or other felony and the court chooses to impose the terms for those felonies consecutively, the principal/subordinate term concept must be followed. (§ 1170.1, subd. (a).) I would remand for resentencing consistent with the views expressed, the court of course being free to sentence concurrently or consecutively so long as the sentencing is pursuant to sections 1170 and 1170.1, subdivision (a).

Appellant's petition for a hearing by the Supreme Court was denied April 26, 1984.

---

to punish the robbery harshly when it imposed the midterm: "Moving over to count 2 which is the second box, the robbery, I have considered the statement and this is the area. And maybe some of the things I said in aggravation probably would apply to the robbery more so than to the rape, *but I have found in weighing the mitigating and aggravating features and just the facts of the robbery exclusive of the rape, if you figure that the rape was over— let's just consider the robbery. It may have lacked class, but it wasn't particularly bad. It's a mid-term robbery.*"