[Crim. No. 25455. Aug. 25, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY JONES et al., Defendants and Appellants.

COUNSEL

Handy Horiye, Laurance S. Smith and Christopher Blake, under appointments by the Supreme Court, and Bruce Daniel Rosen, under appointment by the Court of Appeal, for Defendants and Appellants.

Frank O. Bell, Jr., State Public Defender, and Philip M. Brooks, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant Jones.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Jay M. Bloom, Maxine Cutler, Pat Zaharopoulos and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher N. Heard as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

KAUFMAN, J.—This case raises two principal questions: (1) whether a person convicted of multiple felonies, of which only one is a violent sex offense enumerated in Penal Code section 667.6, subdivision (c), may receive a full, consecutive sentence for that sex offense pursuant to that subdivision; and (2) the weight to be accorded by a sentencing court to a California Youth Authority (YA) amenability determination under Welfare and Institutions Code section 707.2 as amended by the Legislature in 1982.

As will appear, we conclude a single conviction of an enumerated sex offense is sufficient to trigger the sentencing court's discretion under Penal Code section 667.6, subdivision (c), to impose a full, consecutive sentence for that conviction. We also conclude that the 1982 amendment to Welfare and Institutions Code section 707.2 broadened the sentencing court's discretion to impose a state prison term notwithstanding a positive YA amenability determination. Under this broader standard, the court in this case did not abuse its discretion in sentencing defendants Timothy Jones and Arnell Williams to state prison terms.

### I

### Factual and Procedural Background

One evening near midnight Davina B. heard a knock on her door and opened it, thinking it was her roommate. Three young men forced their way in, one holding a gun. The men covered their faces, drank, and searched the house for drugs and valuables. Davina's roommate Robin S. came home around 1 a.m. Each victim was asked at gunpoint to perform a sex act but refused. The men eventually left, taking various items with them and driving away in the pickup truck Robin had been driving.

Two days later Elizabeth and Ricardo C. were asleep in their bed when they were awakened after 1 a.m. by five young men, one of whom had a gun. The men tied and gagged Ricardo and left him in another room. They then took turns raping and sodomizing Elizabeth and holding her down. One attacker put the barrel of the gun into her rectum. The intruders ransacked the house, took various items, and drove away in the victims' car.

Defendants Timothy Jones, Raymond Brooks and Arnell Williams were charged with multiple crimes in connection with these incidents. As a result of a plea bargain, each defendant pleaded guilty to multiple crimes. Jones pleaded guilty to one rape and one robbery count in connection with the second incident. Brooks and Williams each pleaded guilty to two rape counts in connection with the second incident and one robbery count in connection with the first. Defendants were minors when they committed these offenses: Jones and Brooks were 17 and Williams was 16. Notwithstanding determinations by the YA that Jones and Williams were amenable to YA commitment, the court imposed state prison sentences of 17 years for Jones and 23 years each for Williams and Brooks.

The Court of Appeal affirmed the Brooks and Williams judgments. It reversed the Jones judgment for purposes of resentencing only, holding that in his case the lower court had erred in imposing a full and consecutive sentence pursuant to Penal Code section 667.6, subdivision (c),[1] for his single violent sex conviction.

The People petitioned for review, contending the Court of Appeal erred in concluding that multiple enumerated sex offense convictions are required before the sentencing court may impose a full, consecutive term under section 667.6, subdivision (c). Defendants Jones and Williams also petitioned for review, arguing the sentencing court had accorded the YA's amenability determinations too little weight and thus abused its discretion in sentencing them to state prison.

This court granted review and appointed counsel for each of the three defendants. Defendant Brooks resubmitted his Court of Appeal brief contending the sentencing court abused its discretion in declining to commit him to YA. Brooks also challenges the sufficiency of the court's stated reasons for imposing full, consecutive sentences for his two rape convictions.

With our permission two amicus curiae briefs have been filed. In support of defendant Jones, the State Public Defender urges that the legislative

---

[1] Until our discussion of the YA issue in section III of this opinion, all further statutory references will be to the Penal Code unless otherwise noted.

history of section 667.6 indicates subdivision (c) was intended to authorize full, consecutive sentencing only when a defendant is convicted of more than one of the enumerated sex offenses. The Criminal Justice Legal Foundation supports the People in its amicus curiae brief, urging the legislative history of the 1982 amendment to Welfare and Institutions Code section 707.2 demonstrates the Legislature's intent to enlarge the sentencing court's discretion to impose a state prison term notwithstanding an affirmative YA amenability determination.

## II

*Section 667.6, Subdivision (c)*

Defendant Jones was convicted of one count of rape and one count of robbery. His rape conviction was for a violation of section 261, one of the violent sex offenses enumerated in section 667.6, subdivision (c).[2]

---

[2]Section 667.6, subdivision (c), relating to discretionary consecutive sentencing of convictions for the enumerated sex offenses, and subdivision (d), relating to mandatory consecutive sentencing of such convictions, read as follows at the time defendant Jones committed the offenses in this case and at the time the court imposed the consecutive sentences: "(c) *In lieu of the term provided in Section 1170.1,* a full, separate, and consecutive term *may* be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or threat of great bodily harm whether or not *the crimes* were committed during a single transaction. If such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from imprisonment.

"(d) A full, separate, and consecutive term *shall* be served for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or threat of great bodily harm if *such crimes* involve separate victims or involve the same victim on separate occasions.

"Such term shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison." (Stats. 1979, ch. 944, § 10, p. 3258, italics added.)

As part of a 1985 amendment, the words "such crimes" in subdivision (d) were changed to read "the crimes." (Stats. 1985, ch. 401, § 1, p. 1594.) In fact, the 1985 amendment indiscriminately deleted all 14 appearances of the word "such" in the 4 subdivisions of section 667.6 as originally enacted. (Compare Stats. 1979, ch. 944, § 10, p. 3258 with Stats. 1985, ch. 401, § 1, p. 1594.) As will appear, we judge the Legislature's wholesale removal of the word "such" from section 667.6 in 1985 to have been a technical, nonsubstantive revision (see Historical Note, 49 West's Ann. Pen. Code (1988 ed.) § 667.6, p. 686; see text, *post*). In any event, the 1985 amendment was effectuated after defendant Jones committed his crimes and after he was sentenced.

 Jones contends the court erred in sentencing him pursuant to subdivision (c) because that provision should apply only when a person stands convicted of more than one of the enumerated sex offenses.[3] The People, on the other hand, maintain that one such conviction is sufficient to trigger the sentencing court's discretionary authority to impose a full, consecutive term for that conviction.

The Legislature enacted section 667.6 in 1979 to provide longer prison terms for certain sex offenders. (Stats. 1979, ch. 944, § 10, p. 3258.) Before then, the principal provisions governing the sentencing of persons convicted of multiple felonies were sections 669 and 1170.1. Section 669 authorizes the court to decide whether sentences should run concurrently or consecutively. Subdivision (a) of section 1170.1 establishes a formula for computing the length of the aggregate term should the court impose consecutive sentences. Under that formula, the longest term for one offense, including enhancements, becomes the "principal term," and to it are added any "subordinate terms" for the other offenses, limited to one-third of the middle term for each such offense. (§ 1170.1, subd. (a).)

As a more severe consecutive sentencing alternative to the section 1170.1 formula, section 667.6, subdivision (c), permits the imposition of a full, separate, and consecutive term "for each violation of" the enumerated sex offenses. Of course, the occasion for consecutive sentencing under subdivision (c), under section 1170.1, or otherwise, only arises when a defendant is convicted of multiple crimes. The issue here is whether subdivision (c) permits the imposition of a full, consecutive term when only one of the multiple crimes of which the defendant stands convicted is an enumerated sex offense.[4]

---

For simplicity we will sometimes refer to these two pertinent portions of section 667.6 as "subdivision (c)" and "subdivision (d)," respectively.

[3] For convenience we will sometimes refer to the violent sex offenses enumerated in the pertinent subdivisions of section 667.6 as the "ESO's."

[4] This question has been the subject of some disagreement in the Courts of Appeal. Several of the courts reviewing subdivision (c)'s sentencing scheme have stated or implied that it applies only when a person has been convicted of more than one enumerated offense. (E.g., *People* v. *Waite* (1983) 146 Cal.App.3d 585, 590-591, 594 [194 Cal.Rptr. 245]; *People* v. *Masten* (1982) 137 Cal.App.3d 579, 592 [187 Cal.Rptr. 515]; *People* v. *Wilson* (1982) 135 Cal.App.3d 343, 352, 356 [185 Cal.Rptr. 498]; *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 237 [182 Cal.Rptr. 406]; *People* v. *Ottombrino* (1982) 127 Cal.App.3d 574, 586 [179 Cal.Rptr. 676], disapproved on other grounds in *People* v. *Belmontes* (1983) 34 Cal.3d 335, 345 [193 Cal.Rptr. 882, 667 P.2d 686]; cf. *People* v. *McElrath* (1985) 175 Cal.App.3d 178, 187 [220 Cal.Rptr. 698].) Other courts have held or stated that a single conviction of the enumerated sex offenses is sufficient to trigger the court's discretion to impose a full, consecutive sentence pursuant to subdivision (c). (E.g., *People* v. *Howell* (1984) 151 Cal.App.3d 824, 827-829 [199 Cal.Rptr. 110]; *People* v. *Jamison* (1984) 150 Cal.App.3d 1167, 1174-1177 [198 Cal.Rptr. 407]; accord *People* v. *Foley* (1985) 170 Cal.App.3d 1039, 1057-1058 [216 Cal.Rptr. 865]; see

The operative language of subdivision (c) is as follows: "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace, or threat of great bodily harm whether or not the crimes were committed during a single transaction."

Aside from the final clause, "whether or not etc.," this language is plain and unambiguous. It clearly states that, when a defendant has been convicted of multiple felonies, the court has a sentencing choice as to each ESO conviction among those felonies. The court may impose a full, consecutive sentence under subdivision (c) for each such conviction or, instead, it may apply the standard consecutive sentencing formula in section 1170.1. It is contended, however, that the final clause's reference to "the crimes," a comparison with the language of subdivision (d), and the legislative history of subdivisions (c) and (d) establish that subdivision (c) was intended to be inapplicable when only one of the multiple crimes is an ESO or at least create an ambiguity in that regard which must be construed in defendant's favor. None of these contentions is sound.

A. *The Word "crimes" in Subdivision (c)*

Turning first to subdivision (c)'s provision that a full, consecutive term may be imposed for each ESO conviction "whether or not the crimes were committed during a single transaction," it is at once apparent that the "whether or not" language was intended to broaden the scope of subdivision (c)'s effect not to restrict it. Thus, it is highly illogical to suppose that the reference to "the crimes" in the broadening clause was intended to alter the express applicability of the court's discretion to "each violation." ■ Further, throughout California's Penal Code, "the singular number includes the plural, *and the plural the singular* . . . ." (§ 7, italics added; *People v. Jamison, supra,* 150 Cal.App.3d 1167, 1175.) The rule of construction enunciated in section 7 is no mere rubric—it is the law. ■ Therefore, to the extent practicable, we must interpret the plural word "crimes" in subdivision (c) to be consistent with the singular phrase "each violation" appearing earlier in the provision. Viewed in this way, it is quite clear that the Legislature's use of the plural "crimes" was not necessarily intended to restrict subdivision (c)'s operation to situations in which a defendant stands convicted of more than one ESO.

Finally, and most importantly, the assumption that the words "the crimes" in subdivision (c) refer only to the ESO's is incorrect. Subdivision

*People v. Stought* (1981) 115 Cal.App.3d 740, 742 [171 Cal.Rptr. 501]; cf. *People v. Belasco* (1981) 125 Cal.App.3d 974, 983 [178 Cal.Rptr. 461].)

(c) starts with the phrase "In lieu of the term provided in Section 1170.1" and in order to bring section 1170.1 into play at all, the defendant must have been convicted of multiple crimes. In our view, it is to these multiple crimes that the language "the crimes" in the final clause of subdivision (c) must refer. The multiple crimes necessary to bring section 1170.1 into play need not be multiple violent sex offenses; hence subdivision (c)'s reference to "the crimes" likewise does not necessarily refer to multiple ESO's. The entire "whether or not" clause is to be read as the Legislature's shorthand pronouncement that the court may discretionarily impose a full, consecutive sentence for each ESO conviction, irrespective of whether the violent sex crime and the other crime making section 1170.1 potentially applicable were committed "during a single transaction."

Nothing in the use of the plural "the crimes" in subdivision (c), therefore, limits that provision's application to the situation in which two or more ESO convictions are being sentenced. Contrary to the suggestion made, this conclusion is in fact confirmed by comparing the use of the word "crimes" in subdivision (c) to that word's use in subdivision (d).

### B. *The Word "crimes" in Subdivision (d)*

Defendant Jones argues the use of the plural word "crimes" in both subdivision (c) and subdivision (d) necessitates the conclusion that subdivision (c) is limited to the multiple ESO situation. Defendant Jones's logic proceeds as follows: since subdivision (d) only applies to the multiple ESO situation and the word "crimes" appears in both provisions, that word must refer in subdivision (c) to a minimum of two ESO convictions as it concededly does in subdivision (d).[5] This argument too is incorrect in light of applicable rules of statutory construction and the important differences in the language and effect of subdivisions (c) and (d).

---

[5] The Attorney General concedes and we agree that the mandatory consecutive sentencing scheme in subdivision (d) can apply only when a defendant stands convicted of multiple ESO's because of subdivision (d)'s language "if such crimes involve separate victims or involve the same victim on separate occasions." Both those situations necessarily imply multiple ESO's.

However, contrary to the view expressed in the dissent (at pp. 604-605, 606-607), subdivisions (a) and (b) of section 667.6, which provide sentence enhancements for recidivist sex offenders, cannot be meaningfully compared to subdivisions (c) and (d), which relate to the consecutive sentencing of sex offenders irrespective of their records of prior sex offense convictions. The special concerns raised by recidivism among sex offenders—e.g., the failure of previous sentences to rehabilitate an offender or to deter further sexual misconduct—diverge markedly from the concerns surrounding the possible consecutive sentencing of first-time sex offenders and others to whom subdivisions (c) and (d) may be applied. Of course, we cannot quarrel with the dissent's technical observation that subdivisions (a) and (b), like subdivision (d), "apply only to individuals convicted of more than one enumerated sex offense" (at p. 604). Be that as it may, we do not find the recidivist enhancement provisions particularly relevant to the precise question presented in this case.

■ "It is presumed, in the absence of anything in the statute to the contrary, that a repeated phrase or word in a statute is used in the same sense throughout. [Citations.] The rule is, however, quite flexible: 'There is no rule of law that necessarily requires the same meaning to be given to the same word used in different places in the same statute.' [Citations.] 'When the occasion demands it, the same word may have different meanings to effectuate the intention of the act in which the word appears.' [Citations.]" (*People* v. *Hernandez* (1981) 30 Cal.3d 462, 468 [179 Cal.Rptr. 239, 637 P.2d 706].)

Clearly, subdivisions (c) and (d) both authorize the sentencing court to impose a full, consecutive sentence for each ESO conviction. However, while subdivision (c) permits full, consecutive sentencing of each ESO conviction on a discretionary basis, subdivision (d) mandates full, consecutive sentencing of ESO convictions under the circumstances therein specified. The functional difference between a legislative grant of discretionary authority and a legislatively mandated sentencing scheme would suggest that the meaning of the word "crimes" in subdivisions (c) and (d) may not have been intended to be the same.

In addition to the difference in their function, the language of subdivisions (c) and (d) is manifestly different. First, subdivision (c) features the following prefatory clause which is conspicuously absent from subdivision (d): "In lieu of the term provided in Section 1170.1 . . . ." ■ This passage discloses a legislative purpose—one which we have already discussed—which must pervade any discussion of subdivision (c): that it was intended to provide, in the context of violent sex offenders, a discretionary sentencing alternative to the standard consecutive sentencing formula in section 1170.1. (*People* v. *Belmontes, supra,* 34 Cal.3d 335, 343-346; see *People* v. *Stought, supra,* 115 Cal.App.3d 740, 742.) Subdivision (d) contains no similar language and is not an alternative as such, but rather constitutes a mandatory consecutive sentencing scheme applicable only when a defendant has been convicted of two or more ESO's. (See *People* v. *Fitch* (1985) 171 Cal.App.3d 211, 214 [217 Cal.Rptr. 197].)

Secondly, as subdivisions (c) and (d) were originally enacted and as they read at the time defendant committed the crimes and was sentenced in this case, there was a significant language difference in the word immediately preceding and modifying the word "crimes" in the two subdivisions. (Stats. 1979, ch. 944, § 10, p. 3258 (see fn. 2, *ante*).) The relevant language delimiting the application of subdivision (c) read as follows: "whether or not *the crimes* were committed during a single transaction." (*Id.,* italics added.) The correlative phrase in subdivision (d) read: "if *such crimes* involve separate victims or involve the same victim on separate occasions." (*Id.,* italics

added.) By using the word "such" to modify the word "crimes" in subdivision (d), the Legislature made it clear it intended the word "crimes" in that provision to refer back to the immediately preceding list of ESO's. In this way the Legislature indicated that subdivision (d), the mandatory consecutive sentencing provision, was intended to cover only the multiple ESO situation. In subdivision (c), on the other hand, the neutral article "the" was used rather than the word "such." ■ Of course, when *different* words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended. And we are required to ascribe significance to every word of each statute we are called upon to apply. (*People* v. *McCart* (1982) 32 Cal.3d 338, 342 [185 Cal.Rptr. 284, 649 P.2d 926].)

As we noted earlier (see fn. 2, *ante*), subdivision (d) was amended in 1985 to change the words "such crimes" to "the crimes." But nothing in the legislative history of the 1985 amendment reveals any substantive purpose for that change. In fact, the amendment indiscriminately removed all 14 appearances of the word "such" from not only subdivision (d) but from all of section 667.6 as it was originally enacted. (Compare Stats. 1979, ch. 944, § 10, p. 3258 with Stats. 1985, ch. 401, § 1, pp. 1593-1594.) We believe the piecemeal removal of every appearance of the word "such" from the statute constituted a technical, nonsubstantive revision.

Thus it would be incorrect to conclude that the 1985 amendment changed the meaning of subdivisions (c) and (d) with respect to the question raised in this case or, as the dissent suggests, that the removal of the word "such" from subdivision (d) merely revealed that the Legislature intended all along that the word "crimes" in subdivisions (c) and (d) would refer to the same thing, i.e., multiple ESO's. While the dissent apparently prefers simply to disregard the significance of the Legislature's original use of the words "such crimes" in subdivision (d) and the words "the crimes" in the correlative portion of subdivision (c), we believe such disregard would be improvident. ■ "The adjective 'such' sometimes serves a useful purpose, as where it saves having to repeat a concept that cannot be referred to in a word or two. *In statutes and regulations, for example, it may be necessary to make clear that the second reference is to exactly the same concept mentioned previously. The word 'such' is the simplest way to do so.*" (Weihofen, Legal Writing Style (2d ed. 1980) p. 37, italics added.)

■ We conclude, therefore, that the word "crimes" as used in subdivision (c) does not refer to the same crimes as does the word "crimes" in subdivision (d). As already explained, given the introductory clause in subdivision (c) noting that sentences imposed pursuant to it are "[i]n lieu of the term provided in Section 1170.1," which clause is wholly absent from subdi-

vision (d), and given the additional fact that the consecutive sentencing scheme set forth in section 1170.1 comes into play only when the defendant has been convicted of multiple felonies, we believe the words "the crimes" in subdivision (c) were meant to refer to the multiple sex or nonsex felonies otherwise required to bring section 1170.1 into play, not just to multiple ESO's. By contrast, as we have discussed, the words "such crimes" in the mandatory subdivision (d) as originally enacted, by necessary inference from the limited situational scope of its application, referred to the ESO's alone.

## C. Section 667.6's Legislative History

■ The applicability of subdivision (c) to the case at bench also is strongly supported by the legislative history of section 667.6. The proposal for consecutive sentencing of ESO's was originally offered as an amendment to section 288. (Sen. Bill No. 13 (1979-1980 Reg. Sess.) § 7, subd. (g), as introduced Dec. 4, 1978.) After considerable revision, the proposal eventually was recast to create an entirely new section numbered 667.6.

The proposal as originally worded would have mandated consecutive sentencing for each and every ESO conviction with one exception: "[U]nless such violation is committed upon one victim at the same proximate time and place as part of and in immediate conjunction with any other violation of this section upon such victim for which such term is imposed." (Sen. Bill No. 13 (1979-1980 Reg. Sess.) § 7, subd. (g), as introduced Dec. 4, 1978.) The first amendment to Senate Bill No. 13 (offered Feb. 28, 1979) retained the mandatory consecutive sentencing scheme but replaced the exception with the following all-inclusive clause: "whether or not the crimes were committed with a single intent or objective or during a single transaction." This language would have mandated consecutive sentencing for each ESO conviction regardless of the particular temporal and mens rea aspects of the offense.[6] In other words, the February 28 amendment would have altogether

---

[6] Certain contemporaneous legislative committee reports also support this conclusion. A Senate Committee on the Judiciary report on Senate Bill No. 13 as it read in early March 1979 stated: "This bill would . . . provide that a 'full, separate and consecutive term' would be served for each conviction of such an offense." A separate report was drafted by the Assembly Committee on Criminal Justice in July 1979. At that time the proposed amendment to section 288 had been incorporated into the proposed section 667.6. However, only the mandatory "whether or not" language appeared at that time; the discretionary provision had not yet been added. The Assembly committee report stated: "SB 13 provides that a full separate term shall be served for each conviction of rape, rape in concert, sodomy, oral copulation, object rape and child molestation."

Three other legislative committee reports, concerning the unsuccessful proposals in the Legislature's 1983-1984 and 1985-1986 sessions to amend section 667.6, indicate that subdivision (c) applies when a defendant is to be sentenced for more than one ESO. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1646 (1983-1984 Reg. Sess.) p. 4; Assem. Com. on Crim.

eliminated any exception to the mandatory consecutive sentencing of ESO's.

Clearly, in the subsequent enactment of section 667.6 the Legislature abandoned this rather draconian proposition and instead struck a compromise. Subdivision (d) as originally enacted *mandated* consecutive sentencing only in the most egregious cases, to wit, "if such crimes involve separate victims or involve the same victim on separate occasions." Subdivision (c), on the other hand, created a *discretionary* sentencing alternative for ESO's "[i]n lieu of the term provided in Section 1170.1," the standard consecutive sentencing formulation applicable in any case involving multiple felony convictions. And as we have seen, like section 1170.1, subdivision (c) applies whether or not multiple ESO's are involved.

It is most unlikely that in enacting subdivision (c) the Legislature intended it not to apply to the offender who commits a single ESO coupled with a burglary or robbery, because such a scenario is all too common and usually involves particularly pernicious criminal conduct. One frequently recurring scenario is as follows. A burglar breaks into a residence, assuming it to be unoccupied and intending only to steal some items inside, when he comes upon a woman who is unarmed and alone. The burglar recognizes an opportunity to take advantage of the circumstances and commits a "convenient," additional offense involving a separately formed criminal intent— forcible rape, sodomy or oral copulation. It would be improvident to conclude the Legislature disregarded this most common set of criminal circumstances when its clear objective was to vest the sentencing court with discretionary authority to consecutively sentence "each violation" of the egregious sex offense enumerated in subdivision (c).[7]

---

Law & Pub. Safety, Analysis of Sen. Bill No. 1646 (1983-1984 Reg. Sess.) p. 3; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2512 (1985-1986 Reg. Sess.) p. 6; see dis. opn. at p. 608.) That, of course, is true. However, nothing in those reports or elsewhere in the legislative history indicates an intent to preclude application of subdivision (c) where only one ESO has been committed.

[7]The dissent's argument (at pp. 608-609), that applying subdivision (c) in the single-ESO context does not fulfill the Legislature's intent to increase sentences for violent sex offenses, is sophistical. The dissent theorizes that, under the standard consecutive sentencing formula in section 1170.1, the sentence for a single violent sex offense would usually be treated as the "principal term" and thus be fully sentenced anyway. The only effect of utilizing subdivision (c) in such circumstances, according to the dissent, is to increase the sentence for the nonsex felony, which otherwise would be treated as the "subordinate term" under the section 1170.1 formula and would carry a sentence equalling only one-third of the middle term for that offense.

While this is true, it is meaningless. It is beyond question that full, consecutive sentencing of a single ESO pursuant to subdivision (c) results in a longer *total* sentence than would otherwise be imposed under section 1170.1. Obviously, the sentencing court's discretion to impose a longer *total* sentence under subdivision (c) arises *only by virtue of* the defendant's commission and conviction of the sex offense.

## D. *Ambiguity*

Jones lastly suggests that subdivision (c) is, at the very least, ambiguous, and that ambiguities in penal statutes should be resolved in favor of defendants. For this familiar rule of statutory construction, defendant Jones cites *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186], which states: " '[W]hen language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. [¶] The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' [Citations.]" (Accord *People* v. *Garfield* (1985) 40 Cal.3d 192, 200 [219 Cal.Rptr. 196, 707 P.2d 258]; *People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 435 [155 Cal.Rptr. 704, 595 P.2d 139]; *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 488 [134 Cal.Rptr. 630, 556 P.2d 1081].)

As we have discussed, the language of subdivision (c) is largely unambiguous and not *reasonably* susceptible to more than one construction. Even if it could be said that certain aspects of the provision are ambiguous, the various indicators on the face of section 667.6 and related Penal Code provisions and in the statute's legislative history resolve that ambiguity convincingly in favor of the application of the statute to the case at bench.

■ The rule of statutory interpretation that ambiguous penal statutes are construed in favor of defendants is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable. (See *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1145-1146 [240 Cal.Rptr. 585, 742 P.2d 1306]; *People* v. *Banks* (1959) 53 Cal.2d 370, 391 [1 Cal.Rptr. 669, 348 P.2d 102]; *People* v. *Mancha* (1974) 39 Cal.App.3d 703, 719 [114 Cal.Rptr. 392].) "[A] rule of construction . . . is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent." (*In re Estrada* (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948] [discussing § 3].)

This court has the constitutional duty and function of ascertaining legislative intent and construing statutes in accordance therewith. By necessity, this function becomes significant only when a statute is unclear in some respect. It would be inappropriate to automatically conclude that, because a statute is ambiguous in some respect, we are not to attempt to construe its meaning and effect. Such overbroad reliance upon one principle of statutory

construction would constitute an abdication of our responsibility as the final arbiter of the meaning of legislative enactments.

 We conclude that where a defendant stands convicted of multiple felonies, subdivision (c) vests the sentencing court with discretionary authority to impose a full, consecutive term for any ESO conviction, even when the defendant stands convicted of only one ESO.[8]

### III

*Welfare and Institutions Code Section 707.2*

Because each of the 3 defendants was either 16 or 17 years old at the time of these offenses, the court referred them to the YA for an evaluation and report pursuant to Welfare and Institutions Code section 707.2.[9] The YA reports concluded that Jones and Williams were amenable to YA training and treatment, but that Brooks was not.[10] The court nevertheless sentenced Jones and Williams to state prison. Jones and Williams contend the court erred by failing to give proper weight to the YA recommendations.

Defendants rely on *People v. Carl B.* (1979) 24 Cal.3d 212, 214-215, 217-220 [155 Cal.Rptr. 189, 594 P.2d 14]. In that case, decided under an earlier version of section 707.2, we concluded the trial court abused its discretion by failing to accord proper weight to a YA recommendation. But *Carl B.*

---

[8] *People v. Waite, supra,* 146 Cal.App.3d 585, *People v. Masten, supra,* 137 Cal.App.3d 579, *People v. Wilson, supra,* 135 Cal.App.3d 343, *People v. Karsai, supra,* 131 Cal.App.3d 224, and *People v. Ottombrino, supra,* 127 Cal.App.3d 574 are disapproved to the extent they are inconsistent with this opinion.

[9] All further statutory references in the remainder of this opinion are to the Welfare and Institutions Code unless otherwise noted.

[10] Brooks filed no petition for review. After the petitions of Jones, Williams, and the People were granted, we appointed counsel for Brooks as well as for Jones and Williams. As his brief in this court, Brooks resubmitted his brief before the Court of Appeal, in which he argued: (1) that the sentencing court had abused its discretion when it imposed a state prison term relying solely on the fact that the YA evaluation had concluded Brooks *would not* be suitable for a YA commitment and (2) that the court had abused its discretion in, and had failed to enunciate sufficient reasons on the record for, imposing full, consecutive terms for his sex offenses under Penal Code section 667.6, subdivision (c). Brooks made no appearance at oral argument.

Each of Brooks's contentions was correctly rejected by the Court of Appeal. No abuse of discretion appears, because the record indicates the court considered not just the YA finding of nonamenability but also the nature and seriousness of the offenses, the needs of justice, and the need to protect society. (See § 707.2.) Further, the record shows the sentencing court adequately enunciated its reasons for ordering the terms for the sex offenses to be served fully and consecutively pursuant to Penal Code section 667.6, subdivision (c). Those reasons related to the egregious circumstances of the incident involving Elizabeth and Ricardo C.: the particularly violent "gang" rape and sodomy of Elizabeth, the confinement of Ricardo, and the fact that these crimes all took place with the couple's minor child on the premises.

does not control here, because the Legislature amended section 707.2 in 1982, and its clear intent in so doing was to broaden the court's discretion to impose a prison sentence despite a positive YA recommendation.

Before the 1982 amendment section 707.2 read in relevant part as follows: "No minor who was under the age of 18 years when he committed any criminal offense . . . shall be sentenced to the state prison unless he has first been remanded to the custody of the California Youth Authority for evaluation and report pursuant to this section and the court finds after having read and considered the report submitted by the Youth Authority that the minor is not a suitable subject for commitment to the Youth Authority." (Stats. 1976, ch. 1069, § 1, p. 4808.) Faced with a statute focused narrowly on the YA report, we held in *Carl B.* that the court should give the report "great weight" and should ordinarily follow the YA recommendation "in the absence of substantial countervailing considerations." (*People* v. *Carl B., supra,* 24 Cal.3d at pp. 214-215.)

The 1982 amendment to section 707.2 retained the requirement for a YA evaluation and report, but significantly changed the section's description of the court's task once that report is submitted. The second paragraph of the statute now reads: "The need to protect society, the nature and seriousness of the offense, the interests of justice, the suitability of the minor to the training and treatment offered by the Youth Authority, and the needs of the minor shall be the primary considerations in the court's determination of the appropriate disposition for the minor." (§ 707.2.)

The amended section 707.2 provides that the YA report is to address only the minor's amenability to YA training and treatment, but the court's sentencing decision is to be based on five "primary considerations," only one of which is amenability. Thus the emphasis in *Carl B., supra,* 24 Cal.3d 212, on the YA recommendation as ordinarily controlling the sentencing decision is no longer appropriate.

The legislative history fully supports, indeed compels, the conclusion that the Legislature intended to broaden the sentencing court's discretion in this area. The analysis of Assembly Bill No. 3190 by the Senate Committee on the Judiciary included the following comments: "In *In re Carl B.* [*sic*] (1979) 24 C.3d 212, the California Supreme Court held that if the YA recommends that a minor be committed to its jurisdiction, the court must give great weight to that recommendation absent substantial countervailing considerations.

"This bill is a response to that decision.

"....................................

"The purpose of this bill is to permit minors who are tried in adult court to be sent to state prison regardless of the Youth Authority evaluation." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3190 (1981-1982 Reg. Sess.) pp. 2-3.)

The amendment does not mean, of course, that the court is now free to ignore a YA report. The Legislature chose to retain the provision requiring such a report, and that provision would be meaningless if the court were not required to give the report serious consideration.[11] (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672] [statutes should not be so construed as to render any provision nugatory].) The court may decide to reject the recommendation, but its decision to do so must be explained on the record (Pen. Code, § 1170, subd. (c); see Cal. Rules of Court, rule 405(f)), and must be based on legitimate factors, such as those listed in section 707.2.

After reviewing the record we are satisfied that the court's action here was based upon legitimate considerations, such as the need to protect society and the nature and seriousness of the offenses. When sentencing Jones, the court discussed in detail the five factors listed in the statute. It reviewed the nature of the attack upon Elizabeth and Ricardo C., stressing that it involved an armed invasion of a private home, and that the perpetrators were not satisfied with merely robbing the victims at gunpoint, but "brutalized and humiliated" them, raping and sodomizing the wife many times over, and leaving the family "totally destroyed." The court expressed its belief that the siege involved very serious crimes, that society's need for protection from such attacks is high, and that retributive justice and deterrence required a more severe punishment than a YA commitment.

The court reviewed the YA report in some detail, pointing to several comments in each evaluation that it believed undermined the reliability of the overall finding of amenability. It observed that the probation officer disagreed with the YA recommendation. The court concluded that the first three factors—the need to protect society, the seriousness of the offenses, and the interests of justice—outweighed the two remaining factors, defendant's amenability to YA treatment and training and defendant's needs. Accordingly, it sentenced Jones to state prison.

When sentencing defendant Williams, the court again reviewed the five factors and reached the same conclusion, buttressed this time by the fact

---

[11] The retention of the provision requiring a YA evaluation was not a mere oversight. A bill was introduced in the same legislative session that could have substantially modified the provision, and it died in committee. (Sen. Bill No. 2015 (1981-1982 Reg. Sess.).)

that Williams stood convicted of two similar assaults separated by only two days. The court stressed the pattern shown by these incidents: "canvassing a neighborhood looking for easy preys, being armed, purposely selecting a home in which they know there will be occupants that will be vulnerable and completely at their mercy so they can do with them what they will behind closed doors and drawn blinds."

Addressing the YA report, the court again pointed to passages in each evaluation that militated against a finding of amenability. The court emphasized that both the evaluators who assessed Williams's potential for rehabilitation had deemed it "guarded" and that the probation officer had disagreed with the YA recommendation. The court concluded that the first three factors outweighed the other two, and that Williams should therefore be sentenced to state prison.

In short, neither defendant succeeds in showing that the court failed to give serious consideration to the YA recommendation, or that the court's decision to disregard that recommendation was based on improper considerations. We conclude, therefore, that the court did not abuse its discretion in sentencing Jones and Williams to state prison notwithstanding the YA recommendations.

## IV

### *Conclusion*

The judgment of the Court of Appeal is reversed insofar as it relates to Jones's sentence under Penal Code section 667.6. In all other respects the judgment is affirmed.

Lucas, C. J., Panelli, J., and Eagleson, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—I concur in the majority's conclusion that the Legislature, in amending Welfare and Institutions Code section 707.2, intended to broaden the sentencing court's discretion to impose a state prison term notwithstanding a positive Youth Authority amenability determination. I also agree that under the broadened standard the court in the present case did not abuse its discretion when it sentenced defendants Jones and Williams to state prison terms.

I dissent, however, from the majority's conclusion that Penal Code section 667.6, subdivision (c),[1] authorizes a court to impose a full, consecutive

---

[1] All further statutory references are to the Penal Code.

sentence on a defendant who stands convicted of only one enumerated sex offense. I further dissent from the majority's casuistic conclusion that the language of section 667.6, subdivision (c), is not sufficiently ambiguous to require resolution in favor of the defendant.

Our goal in construing statutes is to ascertain the Legislature's intent in order to effectuate the purpose of the law. (*People* v. *Craft* (1986) 41 Cal.3d 554, 559 [224 Cal.Rptr. 626, 715 P.2d 585].) In determining that intent, we must view each part of a statute in the context of the whole statute and its purpose. (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) Accordingly, we must construe subdivision (c) in the context of section 667.6 as a whole. Clearly the Legislature intended for the section to provide longer sentences for certain sex offenders; the question is which such offenders it intended the statute to cover. The structure, language, and legislative history of section 667.6 persuade me that the Legislature intended the statute to apply only to multiple sex offenders.

There is no doubt that the three subdivisions of section 667.6 not at issue here apply only to individuals convicted of more than one enumerated sex offense (ESO). Thus subdivision (a) provides a five-year sentence enhancement when a person convicted of an ESO has a prior ESO conviction. Subdivision (b) provides a 10-year sentence enhancement when a person convicted of an ESO has previously served more than one prison term for ESO convictions. Subdivision (d) mandates the imposition of full consecutive terms for multiple ESO's "if the crimes involve separate victims or involve the same victim on separate occasions."[2] Therefore if subdivision (c) applies to individuals convicted of only one ESO, it is the sole exception to a statute which as a whole applies only to multiple sex offenders. Nowhere, however, does the subdivision reveal it creates such an exception; indeed, its words imply the contrary.

The word "crimes" appears in both subdivision (c) and subdivision (d). There is no doubt that the "crimes" referred to in subdivision (d) are multiple ESO's. Since we presume, "in the absence of anything in the statute to the contrary, that a repeated phrase or word in a statute is used in the same sense throughout" (*People* v. *Hernandez* (1981) 30 Cal.3d 462, 468 [179 Cal.Rptr. 239, 637 P.2d 706]), we must presume the word "crimes" in subdivision (c) refers to multiple ESO's unless something in the statute

[2] The majority concede that the word "crimes" in subdivision (d) refers only to multiple ESO's. (Majority opn. at p. 594, fn. 5.) This fact was made crystal clear by the Legislature's 1986 amendment to the subdivision, which focuses the court's attention on what happens "between the commission of one sex crime and another," and specifically on whether the defendant "resumed sexually assaultive behavior" after an opportunity for reflection. (Stats. 1986, ch. 1431, § 1.)

clearly indicates another meaning was intended. The majority's strained attempts to find such indicators are unconvincing.

First, the majority contend it is illogical to conclude that subdivision (c) refers only to multiple ESO's because the phrase "whether or not the crimes were committed during a single transaction" was generally intended to broaden rather than restrict the subdivision's effect. (Majority opn. at p. 593.) The contention is in error. As I will show, the contention ignores the fact that the quoted language was added to the statute in response to an issue concerning only multiple ESO's. Further, the phrase—even when properly understood to refer only to multiple ESO's—in fact broadens rather than restricts subdivision (c)'s effect.

As the majority themselves observe (majority opn. at p. 597), the "whether or not" language was added to the statute in response to a proposed exception to otherwise mandatory consecutive sentencing for multiple ESO convictions. That exception, as originally proposed, would have applied when the ESO's were "committed upon one victim at the same proximate time and place as part of and in immediate conjunction with any other violation of this section upon such victim for which such term is imposed." (Sen. Bill No. 13 (1979-1980 Reg. Sess.) § 7, subd. (g), as introduced Dec. 4, 1978.) A subsequent amendment eliminated the proposed exception by requiring consecutive sentencing "whether or not the *crimes* were committed with a single intent or objective or during a single transaction." (Sen. Bill No. 13, as offered Feb. 28, 1979, italics added.) The "crimes" referred to in the amendment quite obviously were the multiple ESO's which had been the subject of the proposed exception; in slightly altered form, the same language eventually became part of the discretionary sentencing scheme set forth in subdivision (c). Thus the most logical inference is that the word "crimes" in that subdivision continues to refer to multiple ESO's. In addition, the origins of the "whether or not" language demonstrate that the phrase in fact broadens rather than restricts subdivision (c)'s effect by eliminating what might otherwise have been an exception to eligibility for discretionary consecutive sentencing.

Second, the majority invoke section 7 to support the novel argument that "to the extent practicable, we must interpret the plural word 'crimes' in subdivision (c) to be consistent with the singular phrase 'each violation' appearing earlier in the provision." (Majority opn. at pp. 593-594.) Although the point sounds plausible on first hearing—who would argue against seeking consistency?—on closer examination it is wholly untenable.

The language in question, reduced to its essentials, reads as follows: "A . . . consecutive term may be imposed for each violation . . . whether or

not the crimes were committed during a single transaction." The majority vaguely suggest that the word "crimes" could, in the interests of consistency, somehow be interpreted in the singular. Yet such an interpretation is not logically possible: because a single crime is by definition "committed during a single transaction," the majority's proposed interpretation of subdivision (c) renders the "whether or not" phrase an absurdity, and is "practicable" to no "extent" at all.

Third, the majority assert that subdivision (c) does not require multiple ESO's because, unlike subdivision (d), it starts with the phrase "In lieu of the term provided in Section 1170.1." (Majority opn. at p. 594.) Because non-ESO multiple crimes are sufficient to invoke section 1170.1, they reason, "subdivision (c)'s reference to 'the crimes' likewise does not necessarily refer to multiple ESO's." (Majority opn. at p. 594.) Clearly, of course, subdivision (c) does not—like section 1170.1—apply in the absence of *any* ESO's; thus the question is not whether the criminal convictions in a given case are sufficient to invoke section 1170.1, but rather whether subdivision (c), construed in the context of section 667.6 as a whole, logically requires only one or more than one ESO conviction before it supplies an alternative sentencing formulation.

As explained above, all subdivisions of section 667.6 other than (c) concededly deal only with multiple ESO convictions. Thus in the absence of some indication to the contrary, the most logical reading of the "in lieu of" phrase is that subdivision (c) offers an alternative multiple-felony sentencing option when the multiple felonies are ESO's. The majority reject this conclusion, but fail to explain how they reach the contrary view. Instead, they offer only the conclusory statements that this more logical reading "is incorrect," and that their view establishes how the statute "is to be read." (Majority opn. at p. 594.)

Fourth, the majority attach great significance to the fact that at the time the defendant committed the crimes and was sentenced in the present case, subdivision (c) referred to *"the* crimes" while subdivision (d) referred to *"such* crimes." (Majority opn. at pp. 595-596.) This difference, they assert, raises a "compelling" inference that the Legislature did not intend for the word "crimes" in subdivision (c) to refer to multiple ESO's. (Majority opn. at p. 596.) However, at the same time they are "ascrib[ing] significance to every word" (majority opn. at p. 596), the majority are quick to dismiss as insignificant the fact that the Legislature later eradicated the very distinction on which they rely. (Majority opn. at pp. 591, fn. 2, 596.)

Thus the majority's view on the point is nothing less than an assertion that the Legislature, having carefully expressed its true intent by paying

scrupulous attention to the distinction between "the" and "such" in subdivisions (c) and (d), later blithely abandoned this purportedly crucial linguistic distinction for "technical, nonsubstantive" reasons (majority opn. at pp. 591, fn. 2, 596), while still intending that the pivotal difference in meaning reside in what became identical words. Stated another way, the majority argue that the language difference is significant when it supports their view and insignificant when it does not. Surely the more reasonable conclusion is that (1) the Legislature was willing to remove every appearance of the word "such" from section 667.6 because the word was never intended to convey the critical difference in meaning attached to it by the majority, and (2) the Legislature changed the language so as to clarify any potential ambiguities—i.e., to indicate that the "crimes" referred to in subdivision (d) and the "crimes" referred to in subdivision (c) were in fact the same.

Fifth, the majority contend the legislative history of section 667.6 compels the conclusion that subdivision (c) applies to cases in which only one of multiple felony convictions is for an ESO. Again, however, they state only conclusions rather than reasons. After correctly relating, as described above, the nature of the original legislative proposal and its subsequent amendments, the majority correctly observe that subdivision (d) mandates consecutive sentencing under certain circumstances while subdivision (c) creates discretionary consecutive sentencing " '[i]n lieu of the term provided in Section 1170.1' " for multiple convictions. (Majority opn. at p. 597.) At that point, however, having stated only the background necessary to begin analyzing the question, they skip the analysis entirely and simply state their bald conclusion that "Like section 1170.1, subdivision (c) applies whether or not multiple ESO's are involved." (Majority opn. at p. 598.)

It is revealing in this connection to observe the majority's interpretation of certain legislative committee reports. First, the majority claim support from reports which have no bearing on the present question: all address the original version of Senate Bill No. 13 *before* it had been amended to include the current versions of subdivisions (c) and (d). (See majority opn. at pp. 597-598, fn. 6.) Second, the majority acknowledge yet dismiss later reports which plainly contradict their view. (*Ibid.*) Those reports—written *after* subdivisions (c) and (d) were added—consistently described subdivision (c) as applying "upon conviction for *two or more* of the [enumerated offenses]." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1646 (1983-1984 Reg. Sess.) p. 4, italics added; Assem. Com. on Crim. Law & Pub. Safety, Analysis of Sen. Bill No. 1646 (1983-1984 Reg. Sess.) p. 3; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2512 (1985-1986 Reg. Sess.) p. 6.) The logical implication of the quoted language is obvious: subdivision (c) applies only in multiple-ESO situations. The majority, however, attempt to evade the ob-

vious by asserting in effect that "two or more" may include "one" because it was not stated otherwise. (See majority opn. at pp. 597-598, fn. 6.)

Sixth, the majority contend subdivision (c) must apply to the offender who commits a single ESO coupled with another felony because the Legislature is unlikely to have intentionally excluded this "frequently recurring scenario" from the reach of subdivision (c). (Majority opn. at p. 598.) Their sole statement in support of this assertion is that "It would be improvident to conclude the Legislature disregarded this most common set of criminal circumstances when its clear objective was to vest the sentencing court with discretionary authority to consecutively sentence each egregious sex offense enumerated in subdivision (c)." (Majority opn. at p. 598.) The statement is bootstrapping of the first order: it cites the majority's own interpretation of the very issue being decided—i.e., the Legislature's intent regarding subdivision (c)—as authority in light of which a contrary interpretation would be "improvident."

The Legislature's intent to make subdivision (c) applicable only to multiple sex offenders is apparent not only from the structure and wording of section 667.6 itself, but also from the fact that only rarely would the application of subdivision (c)—as compared to the application of the standard sentencing formulation set forth in section 1170.1—result in increased punishment for an ESO if the subdivision were applied in a one-ESO multiple-conviction situation.

The reason is simple: because few crimes carry heavier individual penalties than those for the ESO's specified in section 667.6,[3] the ESO penalty in a one-ESO multiple-conviction situation would almost always be selected as the "principal term" under section 1170.1. The penalty for the non-ESO

---

[3] Section 667.6's enumerated crimes of rape (§ 261, subds. (2), (3)), oral copulation (§ 288a), sodomy (§ 286), lewd acts on a child under 14 years (§ 288, subd. (b)), and penetration by a foreign object (§ 289) are each punishable by 3, 6, or 8 years. Acting in concert to commit these crimes (§§ 264.1, 286, 288a) is punishable by 5, 7, or 9 years. Few crimes carry heavier penalties, and those that do for the most part involve death or great bodily injury: murder (§ 190) is punishable by death, life without possibility of parole, 25 years, or 15 years to life; voluntary manslaughter (§ 193) is punishable by 3, 6, or 11 years); kidnapping (§ 209), under certain circumstances, is punishable by life without possibility of parole; attempted murder of a public official to prevent the official from performing his duties or in retaliation (§ 217.1) is punishable by 15 years to life; train wrecking (§ 218) is punishable by life without possibility of parole; assault with a deadly weapon on a police officer (§ 245) is punishable by 4, 6, or 8 years; arson causing great bodily injury (§ 451, subd. (a)) is punishable by 5, 7, or 9 years; procuring execution of an innocent person through perjury or subornation of perjury (§ 128) is punishable by death or life without possibility of parole; and treason (§ 37) is punishable by death or life without possibility of parole. There are also a number of sexual offenses which are as severely punished when they involve children. (§§ 266h, 266i, 266j.)

offense would then be treated as a "subordinate term" and sentenced at one-third of the midterm. However, were the same crimes sentenced under section 667.6, subdivision (c), the non-ESO offense would in effect be treated as a principal term, to which the full ESO term would run consecutively. Thus although the combined term would be longer under subdivision (c) than under section 1170.1, it almost always would be the *non*-ESO, rather than the ESO, for which the punishment was increased. It is most unlikely the Legislature intended such a result from a statute plainly aimed at specified sex offenses.

In addition, the Legislature has provided *elsewhere* for increased penalties in aggravated single-ESO situations. Section 12022 provides for a one-year sentence enhancement for being armed with a deadly weapon during an offense, and a two-year enhancement for use of such a weapon. Section 12022.3 provides for a two-year sentence enhancement for being armed, and a three-year enhancement for use of a weapon, if the offense is a violation of sections 261, 264.1, 286, 288, 288a, or 289. Section 12022.7 provides for a three-year enhancement if great bodily injury occurs. Section 12022.8 provides for a five-year enhancement if great bodily injury occurs during a violation of sections 261, 264.1, 286, 288, 288a, or 289. All these enhancements may be added to the "principal term" for an ESO sentenced in conjunction with a non-ESO under section 1170.1; thus section 667.6, subdivision (c), in addition to being generally ineffective as a means of punishing single ESO's more harshly, is unnecessary for that purpose.

Finally, the majority reject the contention that the language of subdivision (c) is sufficiently ambiguous to entitle the defendant to the benefit of the doubt. Although they acknowledge the familiar rule that " '[W]hen language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted' " (majority opn. at p. 599, quoting *People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186]), they seek to avoid its application by simply declaring that "the language of subdivision (c) is largely unambiguous and not *reasonably* susceptible to more than one construction." (Majority opn. at p. 599, italics in original.) The emptiness of this self-serving declaration is obvious: if subdivision (c) were in fact unambiguous and reasonably susceptible to only one construction, the majority would not have had to offer the series of tortured and untenable arguments outlined above. Nor would the Courts of Appeal have sharply disagreed in their interpretations of the statute. (See *People* v. *Ottombrino* (1982) 127 Cal.App.3d 574, 586 [179 Cal.Rptr. 676]; *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 237 [182 Cal.Rptr. 406]; *People* v. *Waite* (1983) 146 Cal.App.3d 585, 590-591, 594 [194 Cal.Rptr. 245]; *People* v. *Jamison* (1984) 150 Cal.App.3d 1167, 1174-1177, 1178-1183 [198 Cal.Rptr. 407] (dis. opn.

of Butler, J.); *People* v. *Howell* (1984) 151 Cal.App.3d 824, 827-829, 831-833 [199 Cal.Rptr. 110] (dis. opn. of Hanson (P. D.), J.).)

In my view the language, construction, and history of section 667.6 indicate that subdivision (c) is correctly construed as applying only to defendants convicted of more than one ESO. Even assuming a contrary conclusion could plausibly be reached, the statute's remaining ambiguity would require resolution in favor of the defendant. I would affirm the judgment of the Court of Appeal in all respects.

Broussard, J., concurred.

**ARGUELLES, J.,** Concurring and Dissenting.—I concur fully in the majority's conclusion that the trial court did not violate Welfare and Institutions Code section 707.2 or abuse its discretion in not sentencing defendants to the Youth Authority.

I respectfully dissent, however, from the majority's conclusion as to the proper interpretation of Penal Code section 667.6, subdivision (c) (hereafter subdivision (c)). Although it is not as clear to me, as it apparently is to Justice Mosk, that the Legislature made a conscious decision to limit the application of subdivision (c) to cases in which a defendant has been convicted in the current proceeding of more than one enumerated sex offense, I do think that the language of subdivision (c) is ambiguous on this point, even when viewed in light of the legislative history set forth in the majority opinion. The sharp division in the Court of Appeal decisions which have addressed this question of statutory interpretation (see maj. opn., *ante,* p. 592, fn. 4) provides, I think, persuasive evidence that the statutory provision is at least reasonably susceptible to varying interpretations.

In light of the established principle of statutory construction—reiterated by Justice O'Connor in writing for the United States Supreme Court just a few months ago—"that uncertainty concerning the ambit of criminal statutes should be resolved in favor of lenity" (*United States* v. *Kozminski* (1988) 487 U.S. __ [101 L.Ed.2d 788, 810, 108 S.Ct. 2751, 2764]; see, e.g., *Simpson* v. *United States* (1978) 435 U.S. 6, 14-15 [55 L.Ed.2d 70, 77-78, 98 S.Ct. 909]; *People* v. *Belmontes* (1983) 34 Cal.3d 335, 345 [193 Cal.Rptr. 882, 667 P.2d 686]), and in view of the fact that the Legislature could rationally have intended to reserve the more severe sentencing alternative of subdivision (c) for defendants who commit multiple sex offenses, I conclude that the statute should be interpreted to apply only to cases involving multiple sex offenses. If the Legislature believes that a "full, separate and consecutive sentence" should be an available sentencing option when a

defendant has committed only one enumerated sex offense, it can and should amend the statute to clearly so provide.