Filed 2/17/26  P. v. Coracero CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. TEODORO ANTONIO CORACERO, Defendant and Appellant. | 2d Crim. No. B333580 (Super. Ct. No. 21CR04424) (Santa Barbara County) |

Teodoro Antonio Coracero appeals a judgment following his conviction for lewd or lascivious acts upon a child under 14 years of age (Pen. Code,[1] § 288, subd. (a), (counts 1-5)); forcible lewd acts upon a child under 14 years of age (§ 288, subd. (b)(1), (count 6)); sending pornography to a minor (§ 288.2, subd. (a)(2), (counts 7-8)).  The jury found true aggravating factors that the crimes involved a high degree of cruelty or viciousness, and that he took

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

advantage of his position of trust to commit them.  (Cal. Rules of Court, rules 4.421(a)(1) & (11).)  The court sentenced appellant to an aggregate prison term of 24 years and 4 months.

We conclude, among other things, that:  1) a juror's letter submitted after trial claiming the jury's view of the defendant at the defense table was blocked did not support a finding that appellant was denied a fair trial, 2) the trial court did not abuse its discretion by excluding certain impeachment evidence, 3) there is no showing of misconduct by the prosecutor, and 4) the court erred by sentencing appellant to a consecutive mid-term of eight years on count 6.  We will reverse the sentence, remand for resentencing.  In all other respects we will affirm.

FACTS

Jane Doe, 12 years old at the time of trial, lived with her father Todd and her mother Lola.  Appellant, her uncle, and his wife Martha lived next door.  Lola and Martha are sisters.

Doe testified that before she was at the age when she started going to school, she was at appellant's house.  He touched her on her chest and genital area.  This happened when they were laying on a bed and he was watching an adult website displaying adults having sex.  After she saw the pornography she ran home.  Over the years, appellant touched her in this manner about ten times.

In one incident, appellant asked Doe if she wanted to watch a movie on television in his living room.  She agreed and sat on a couch.  Appellant touched her on her vagina and stroked her thigh area.  In another incident, Doe was in the pantry of appellant's house looking for food.  Appellant followed her, hugged her and touched her vagina under her underwear.  One day, appellant decided to take a picture of Doe.  He tried to pull

2

her shirt up and remove her sports bra.  He was trying to remove her sports bra with one hand and take a picture with his other hand as she resisted.

Appellant had sheds in the backyard of his property.  One day he went into a shed and asked Doe to help him fix something.  Doe agreed.  He grabbed her head and told her to wait.  Appellant came back with his computer and pulled up a site with adult videos.  Doe told him she was not going to watch it and walked away.  Later that day, Doe was trying to find a soccer ball in a shed.  Appellant came in.  He reached down and touched her vagina and her chest.

In another incident, appellant grabbed Doe's hand and forced her to touch his penis.  He made her move her hand up and down as his penis got harder.  He told her not to tell anyone about this incident.  Doe was afraid to tell her parents about what appellant did.

S.L., Doe's sister, testified that Doe would go to appellant's house once or twice a week.  In May of 2021, Doe told S.L. she had been "abused", and she did not want to talk about it.  Doe told her that her mother was abusing her.  S.L. contacted their mother Lola.

Lola testified that she asked Doe if anyone had touched her "where your bathing suit covers."  Doe responded no.  Doe said, "Perhaps this is a dream.  Maybe it was a nightmare."  Thereafter, Todd, Doe's father, asked her "What's going on?"  Doe started crying and pointed toward appellant's house.  He asked, "Is it someone over there?"  She responded, "Yes.  Tio." referring to appellant.  Because it was hard for Doe to explain what happened, they asked her to write it down.

Doe wrote, among other things, "It all started when I was about 4-5 years old. . . . It soon started during into days, months, and then years. I knew I had to just tell someone about it because it wasn't right. [Appellant] told me if I ever told anyone bad things were probably going to happen. He later tried to touch me where my bathing suit cover, like down in my private area and kind [of] down my chest area. He kept trying to do it to me until one day we went behind one of his giant sheds and [he] asked me to be his 'girlfriend.' . . . I had to keep this secret for 5-6 years . . . I soon realized I had to get help from someone because this was bad enough." Doe testified what she wrote was true, nobody told her what to write.

Todd, Doe's father, testified he knew something was wrong before Doe made the disclosure about appellant. He did not like Martha and "didn't really have a relationship" with appellant.

In the defense case, Alicia Gonzalez testified appellant was her son in law. Doe told her that appellant did not touch her "buttocks, her breasts." Gonzalez said she was familiar with Doe and "[s]ometimes she lies." Gonzalez testified that Doe's "mom and dad told her to say lies." Lorena Martinez, appellant's sister, testified that she had to help him because appellant had several surgeries. As a result of neck surgery "he couldn't move." She had to help him sit and he had trouble holding things. A.C., appellant's son, testified that Doe would come to their house and play. He, Doe, and his cousins played together as a group. On cross-examination, he said there were times when they were not together as a group. On those occasions, he "didn't necessarily know where she was."

Martha testified appellant had eight surgeries. After his 2014 surgery there was an 18 month period where "[h]e could not

move" or "grab anything." Children could not come into their home without their mother being present until after 5:30 p.m. Between the period October 2014 to September 2019, appellant was not "left in the home without another adult present." The children played outside in the backyard, if they had to come in another adult would be present. She was not at her house on workdays between 9 a.m. and 2:15 p.m. During certain time periods in 2020 and 2021 appellant spent time in Mexico. Doe "loved being around" Martha and appellant. Appellant would not be capable of molesting Doe, and Doe never mentioned that he had molested her.

In rebuttal, Dr. Jody Ward, a psychologist and expert on child sexual abuse accommodation syndrome (CSAAS), testified CSAAS explains "a pattern of behaviors that many children exhibit who have been sexually abused." Such children may "accommodate the abuse by acquiescing or going along with the sexual abuse." They may delay reporting it. They may not reveal the sexual abuse and "tend to test the waters and see how the person that they make that disclosure to is going to respond to that disclosure.

DISCUSSION

*The Juror's Letter, Due Process And Juror Misconduct*

Appellant claims a post-trial juror's letter shows there was a procedural error that deprived him of due process and a fair trial. We disagree.

At the end of trial, the court requested jurors to make recommendations to improve the court's procedures. A juror wrote a letter stating, among other things, that during the trial, "whenever the defense attorney and [appellant] were at the table . . . only two jurors . . . could see [appellant] since the defense

5

attorney blocked the view of most of the jurors. . . . My opinion is that the defense did not want the jury to be able to watch the defendant, which is understandable, given their goals." The juror suggested placing "the defendant on the left side of the table (when facing the table) in better view of all the jury. This way the defendant could not hide in the courtroom.

The could held a hearing to discuss the letter. Appellant's counsel stated, "[I]t was not my intention to in any way hide [appellant] or prevent the jury from being able to watch him."

Appellant relies on the juror's letter to claim the jury was prevented from seeing the defendant. But the trial judge was in the best position to decide the juror's credibility and whether the jury's view of the defendant had been blocked. (*People v. Dunn* (2025) 18 Cal.5th 129, 163.) The trial court made factual findings on these issues that do not support appellant's claims on appeal.

The trial court found nobody "tried to block any juror's view." It said, "I think just as a practical matter sometimes, depending on where certain people are standing during questioning or movement . . . within the courtroom, some views may be blocked *momentarily, temporarily*." (Italics added) The court essentially made a negative credibility finding about the juror's letter and stated , "I don't recall . . . any jurors noting anything about . . . not being able to see anything."

Moreover, appellant did not preserve an adequate record in the trial court to challenge the trial court's findings on appeal. His counsel did not raise this issue in a motion for new trial or present evidence and request the court to make additional findings on how a blockage of the jury's view impaired his right to a fair trial. The juror's unsworn hearsay letter that was rejected by the trial court does not constitute "admissible evidence" to

6

challenge the verdict. (*People v. Loot* (1998) 63 Cal.App.4th 694, 697.) Appellant has not cited to any evidence at the hearing to challenge the judge's findings because he presented no evidence there. Because appellant did not make an adequate factual record to support his factual claims on appeal we must defer to the trial court's findings. (*People v. Dunn, supra*, 18 Cal.5th at p. 163; *People v. Gurule* (2002) 28 Cal.4th 557, 602.)

Appellant contends any blockage of the jury's view of him constitutes a denial of due process. The People contend this claim has been forfeited. We agree with the People. Appellant's counsel made no claim in the trial court that his rights to due process had been violated because the jury's view of him had been blocked. She only responded to the phrase in the juror's letter stating "This way the defendant could not hide in the courtroom." Appellant's counsel responded by stating "I would like to note, just for purposes of appeal, an objection that . . . could be cause for a mistrial and want to preserve that issue for any reviewing court." But counsel thereafter did not make a motion for a mistrial and did not raise a due process claim based on the jury's inability to see appellant.

Because the due process issue was not raised below the "'trial court had no opportunity to resolve material factual disputes and make necessary factual findings,'" and the issue is forfeited on appeal. (*People v. Gurule, supra*, 28 Cal.4th at p. 602.) " '[I]t would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention.'" (*People v. Jones* (1998) 17 Cal.4th 279, 299, fn. 1.)

Appellant contends the juror letter showed jury misconduct. To show jury misconduct after the end of trial

7

appellant had to file a motion for a new trial with admissible evidence of the misconduct and a showing how it was prejudicial. (*People v. Loot*, *supra*, 63 Cal.App.4th at p. 697.)  At the hearing on the juror letter appellant's trial counsel, in one conclusory sentence claimed to leave open a misconduct issue if an appellate counsel wanted to raise it.  But significantly, his trial counsel did not request a mistrial at that hearing, did not file a motion for a new trial based on jury misconduct, and did not make an evidentiary showing of misconduct and prejudice.  That constitutes a forfeiture of this issue.  (*People v. Gurule*, *supra*, 28 Cal.4th at p. 602.)

He claims his trial counsel was ineffective for not properly raising a due process or jury misconduct claim in the trial court.  But where counsel was not asked for an explanation for the alleged omission and "'"the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged,"'"  as here, "'the claim on appeal must be rejected.'"  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)  Here the trial court made its findings and determined no further proceedings were necessary in response to the juror's letter.  Appellant has not shown why his trial counsel could not reasonably agree with the trial court's assessment and believe a challenge to it would not be meritorious.

*Exclusion of Certain Impeachment Evidence*

Appellant contends the trial court abused its discretion by excluding defense evidence that: 1) Doe was "living in an unstable and abusive household," 2) Martha  confronted Todd about his drinking, 3) Todd threatened to get even with Martha, and 4) it was "possible" Todd "may have" coached Doe to make false charges against appellant to get even with Martha.

8

A trial court has wide latitude in excluding evidence that is "'prejudicial, confusing of the issues, or of marginal relevance.'" (*People v. Ayala* (2000) 23 Cal.4th 225, 301.) "[R]eliance on Evidence Code section 352 to exclude evidence of marginal impeachment value that would entail the undue consumption of time generally does not contravene the defendant's constitutional rights . . . ." (*People v. Brown* (2003) 31 Cal.4th 518, 545.) "A fact may bear on the credibility of a witness and still be collateral to the case." (*People v. Contreras* (2013) 58 Cal.4th 123, 152.) A trial court may properly prevent a case ""from degenerating into nitpicking wars of attrition over collateral credibility issues . . . .""" (*People v. Pearson* (2013) 56 Cal.4th 393, 454.) It may properly exclude evidence that is "unduly speculative," without "an adequate foundation" or evidence of motive that is speculative. (*People v. McWhorter* (2009) 47 Cal.4th 318, 362, 372.)

Here the court allowed the defense to introduce a substantial amount of evidence to impeach Doe's credibility. Defense counsel provided no offer of proof of direct evidence that Todd coached the child. Instead, appellant's counsel claimed Alicia Gonzalez would testify that Todd drank excessively and was upset with Martha for "reporting his domestic abuse" of his wife. It was her "opinion" that "Todd coached Jane Doe to make up allegations against [appellant] to get back [at appellant's] family."

Gonzalez did not witness any act of Todd coaching the child. The court ruled her opinion that he coached her was not admissible. Appellant has not shown the court erred by excluding alleged evidence of coaching based solely on speculation. (*People v. McWhorter*, *supra*, 47 Cal.4th at pp. 362,

372; *People v. Babbitt* (1988) 45 Cal.3d 660, 682 [speculative evidence is irrelevant].)  The People note that the defense made a showing of animus between Todd and Martha, but not between Todd and appellant.  Todd testified that he did not like Martha, and had no relationship with appellant.  Defense counsel did not make a factual showing why animus with Martha would cause him to coach his daughter to fabricate a case against appellant and subject his child "to the traumatizing ordeal of being a victim in a sexual abuse case."

The trial court also found the defense request to introduce evidence about problems between Doe's parents was not relevant to the charged offenses.  It found its probative value was substantially outweighed by the undue consumption of time to present it, that it would confuse the issues, "mislead" the jury and cause "undue prejudice."  The People note that the defense did not provide a sufficient factual nexus or foundation in their offer of proof to demonstrate how a "supposedly tumultuous homelife would cause a ten-year old Doe to fabricate sexual abuse allegations against her uncle," who did not live there.  The court properly prevented the case ""from degenerating into nitpicking wars of attrition over collateral credibility issues""" (*People v. Pearson*, *supra*, 56 Cal.4th at p. 454) based on speculation.

*Prosecutorial Misconduct*

Appellant notes the prosecutor in closing argument told jurors "it is a defense tactic to create doubt, to cloud the issues, and to detract."  Defense counsel objected.  The trial court overruled the objection.  Appellant claims this language was misconduct. It was not.

In *People v. Gionis* (1995) 9 Cal.4th 1196, our Supreme Court held a prosecutor's comments that the defense counsel's job

10

is to "'"confuse,"'" to "'"throw sand in your eyes"'" and "'"get this man off'"'" did not amount to misconduct.  Instead, they were a proper "'reminder to the jury that it should not be distracted from the relevant evidence . . . .'" (*Id* at p. 1217.)  The prosecutor's argument here was of the same ilk.

Appellant claims the prosecutor was improperly vouching for the witness and denigrating the defense by stating: 1) "to suggest that Jane Doe is doing this for attention is patently offensive," and 2) "She was telling you the truth on the stand." This was not misconduct.  The prosecutor was merely 1) responding to the defense claim that Jane Doe made up a story to draw attention to herself and 2) explaining that she had no motive to lie.  (*People v. Thomas* (1992) 2 Cal.4th 489, 526 [the "'prosecutor has a wide-ranging right to discuss the case in closing argument . . . and to urge whatever conclusions he deems proper'"].)  There was no vouching because the prosecutor was relying on facts in the record not her personal assurance to the jury that they could trust the prosecution in deciding this case. (*People v. Sully* (1991) 53 Cal.3d 1195, 1235.)

Appellant claims the prosecutor in closing argument improperly cited to CSAAS evidence to prove he committed the acts of child sexual abuse.  But his defense counsel did not object. "'"[A]defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.'" (*People v. McDermott* (2002) 28 Cal.4th 946, 1001.)

Moreover, this claim fails on the merits.  The trial court properly instructed the jury on its use of child sexual abuse accommodation syndrome evidence.  (CALCRIM No. 1193; *People*

*v. Lapenias* (2021) 67 Cal.App.5th 162, 175.)  The instruction provided, in relevant part, "You have heard testimony from Dr. Jody Ward regarding child sexual abuse accommodation syndrome.  [¶]  Child sexual abuse accommodation syndrome relates to a pattern of behavior that may be present in child sexual abuse cases. . . .  [¶]  Dr. Ward's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.  [¶] *You may consider this evidence only in deciding whether or not Jane Doe's conduct was consistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony.*"  (Italics added.)

Appellant claims the prosecutor undermined this instruction by telling jurors Dr. Ward's testimony showed appellant committed the sexual offenses.  We disagree.

The prosecutor stated, "You heard from Dr. Ward that crimes of child sexual abuse like the one the defendant perpetrated against Doe happen in secret. They happen behind closed doors.  They happen behind walls.  They happen in corners of houses.  They happen when other people are around.  They happen even when other family members are in the room.  *Jane Doe's testimony was credible.  Her behavior and her demeanor are consistent with a child who has been the victim of child sexual abuse.*"  (Italics added.)

The prosecutor used Dr. Ward's testimony for the proper purpose of showing the child was credible and her conduct was consistent with a child who was a victim of sexual abuse.  (*People v. Lapenias*, *supra*, 67 Cal.App.5th at p. 175; CALCRIM No. 1193.)

12

Appellant claims the prosecutor improperly "argued facts that contradicted evidence it had successfully excluded." He notes that the People had excluded evidence about a "highly acrimonious relationship" between Jane Doe's father and the Coraceros which allegedly gave the father "a motive to coach his daughter." But he claims during closing argument the prosecutor said, "There was no evidence of any strain in the relationship between the families prior to these disclosures." He claims this argument was improper.

Appellant's trial counsel did not object to this argument which forfeits this issue on appeal. (*People v. McDermott, supra*, 28 Cal.4th at p. 1001.) Moreover, during closing argument *defense counsel* told the jury that friction between the child's father and the appellant could be the motive for the father to coach his daughter to bring false charges against appellant. The prosecutor's statement was merely a response to defense counsel's argument. It was not an attempt to bring excluded evidence to the jury's attention. Moreover, an objection and admonition would have excluded these references and appellant has not shown the prosecutor's statements constituted prejudicial misconduct.

*Sentencing*

The trial court sentenced appellant to a consecutive mid-term of eight years on count 6 under section 667.6, subdivision (d)(1). But as the parties correctly note "the mandatory consecutive sentencing scheme in subdivision (d) can apply only when a defendant stands convicted of multiple" enumerated sex offenses under this statute. (*People v. Jones* (1988) 46 Cal.3d 585, 594, fn. 5.) Here appellant was convicted of only one offense under section 667.6, subdivision (e) and therefore the sentence on

count 6 must be reconsidered. We express no opinion whether the sentence should run concurrent or consecutive.

DISPOSITION

The sentence is reversed and the case is remanded to the trial court for resentencing. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


CODY, J.

We concur:


YEGAN, Acting P. J.


BALTODANO, J.

14

Von Deroian, Judge
Superior Court County of Santa Barbara
_____

Elizabeth K. Horowitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and J. Michael Lehmann, Deputy Attorney General, for Plaintiff and Respondent.